# Phillips v. Bradshaw.

*Libel and Slander.*

(Decided May 12, 1910.    52 South. 662.)

1. *Libel and Slander; Words Actionable Per se.*—Words which impute larceny are actionable per se.

2. *Same; Imputing Crime; Malice Presumed.*—Words imputing crime are presumed to be malicious and no other evidence of malice is necessary, unless the words are privileged.

3. *Same; Good Character.*—The gist of an action for words imputing larceny is the false and malicious injury to plaintiff's character, and in addition to the presumption in his favor the plaintiff may show his good character and the falsity of the charge as proving malice in fact and as affecting the measure of recovery.

4. *Same; Evidence.*—Where the defendant was permitted to testify without objection that he had never stolen cotton from any one, and that at the date of the contract the company of which defendant was president became indebted to him under the contract in a large sum for advances made by him to wage hands on the plantation and for cultivating the crops up to that date, and the court admitted evidences of advances after the date of the contract but declined to admit evidences of advances before said date, and there was no objection to this limitation, and the defendant was thereafter asked whether some of the indebtedness to which he had testified was not for money furnished the share croppers, and objection was sustained thereto, this latter ruling was not a departure from the previous ruling; the distinction asserted by the question, if any, not affecting the charge against plaintiff alleged to have been made by the defendant.

5. *Same; Variance; Interpretation of Language.*—The language used as a basis for slander is to be interpreted in its ordinary acceptance, and if to the ordinary apprehension the charge is larceny, it will not be held to constitute a charge of embezzlement and so establish a variance for the reason that it was defective as a technical charge of larceny, and that the charge of embezzlement would have been more appropriate.

6. *Same; Evidence of Malice.*—One making a slanderous statement knowing that it was untrue is conclusively presumed to be actuated by malice.

7. *Same; Privileged Communication.*—No privilege attaches to mere gossip.

8. *Same.*—Communications by an employer to a superintendent as to the care and protection of property committed to him are confidential, and, if made without express malice, are not actionable, though unjust and expressed in terms supporting an action under different circumstances.

9 *Same.*—Communications by an employer to his superintendent as to the protection and care of property committed to him are conditionally privileged at least. In such instances the law withdraws the legal inference of malice and gives protection on condition that actual or express malice, as distinguished from malice implied by law where a wrongful act is intentionally done, is not shown.

10. *Same.*—A privilege is not defeated by the mere fact that the statement is made in the presence of others than the parties immediatly interested, or by the fact that the communications are intemperate.

11. *Same.*—In determining whether a communication is privileged the test is whether it is made in good faith in discharge of some legal or moral duty or in the fair and honest prosecution of right or protection of interest on the one hand, or on the other as inspired by ill will, and such question is for the decision of the jury.

[Phillips v. Bradshaw.]

12. *Same; Actual Malice; Determination.*—If a communication wherein an alleged slander was repeated was privileged, it cannot be weighed against the defendant as going to show actual malice in the communication on which the suit was based.

13. *Same; Instructions; General Charge.*—Where the version of the words alleged to have been used as given by the plaintiff was so variant from that as given by the defendant that a variance between the pleading and proof would have resulted from the unqualified acceptance of defendant's testimony, the general charge could not properly be given for the plaintiff.

14. *Same; Privileged Communications; Instructions.*—The privileged character of the communication was asserted with proper hypothesis by the court in a charge that if, on an occasion previous to that laid in the complaint, defendant stated to the witness that plaintiff had stolen cotton belonging to the company, or had diverted it to his own use, or words to that effect, as testified to by the witness, and at the time defendant had a right to believe witness was superintendent of a farm and the words were spoken in what the defendant honestly believed to be in discharge of his duties in the interest of the company, defendant's utterances on that occasion were privileged communications, from which the law withdraws an inference of malice, and that they were not malicious and could not be considered as evidence of malice in the utterances in the complaint.

15. *Same.*—A charge asserting that if the defendant at the time had a right to believe the person to whom he spoke was superintendent of the company's farm and the words were spoken with a view to protect its interest against plaintiff, his statement was a privileged communication, though he may have entertained improper or even unjust suspicion of plaintiff's honesty, failed to assert the privileged character of the communication with proper hypothesis, since the publication in such a case may have been malicious though made to protect the company's interest, and if both motives therein expressed concurred, there was no privilege.

16. *Charge of Court; Not Supported by Evidence.*—A charge not supported by the evidence is always properly refused.

17. *Appeal and Error; Review; Exclusion of Evidence.*—If the ruling of the court in excluding evidence can be sustained on any ground error will not be imputed.

18. *Same; Error Not Apparent.*—Where neither the question which was overruled as to a certain agreement nor the record disclosed the nature or relevancy to any issue of the agreement proposed to be shown, error cannot be imputed.

19. *Evidence; Parol Affecting Writing.*—Where the slander was based on a charge of larceny of cotton from a plantation, managed by the plaintiff under a contract with the company of which defendant was president, and if plaintiff's appropriation of the cotton was honestly made in reliance on the agreement between him and the president, it was competent for plaintiff to show an agreement which authorized the appropriation of the cotton in order to show his intent and thus to falsify the alleged slander and to show the president's knowledge of such an agreement, and this without infringing on the rule that as between the parties in a proceeding to enforce the contract the writing becomes the sole memorial of all prior and contem-

poraneous agreements; so the plaintiff might be asked as to the agreement between he and the president without the question being objectionable as seeking to vary by parol the terms of a written contract.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action for libel and slander by L. W. Phillips against Caldwell Bradshaw. Judgment for defendant and plaintiff appeals. Reversed and remanded.

Mrs. Christlieb testified in substance that somewhere between the 1st and 15th day of April, 1908, Caldwell Bradshaw came into the lobby of the Colonial Hotel in Birmingham, Ala., and stated to her that the plaintiff stole 15 bales of cotton from the Birmingham Industrial Company's farm before Bradshaw could get over to Columbus, Ga. On cross-examination she testified as to certain matters connected with the hotel and about her dissatisfaction therewith, and that Bradshaw replied that he had been worse treated than she had, as he had traded the hotel for the plantation, and that Phillips had stolen or taken 15 bales of cotton from the plantation. Bradshaw's version of the conversation is as follows: That Dr. Phillips had taken 15 bales of the company's cotton out of the state of Alabama, and into Columbus, Ga., and had there sold it, and appropriated the proceeds to his own use, and that, so far as the company's interest is concerned, he might as well have stolen it. What is said in reference to the declarations made by Prince sufficiently appears in the opinion.

The following charges were given at the instance of the defendant:

"(A) I charge you, gentlemen of the jury, that if you believe the evidence of W. S. Prince that defendant, on November 30, 1907, an occasion previous to that laid in the complaint in this case. stated to the said

[Phillips v. Bradshaw.]

Prince that the plaintiff had stolen 15 bales of cotton belonging to the Birmingham Industrial Company, or had converted it to his own use, or words to that effect, as testified by W. S. Prince, and you further believe from the evidence that the defendant had the right to believe at that time that W. S. Prince was the superintendent of the farm, and that the words were spoken by the defendant in which he honestly conceived to be in the discharge of his duties to the interest of the Birmingham Industrial Company, that the utterances of the defendant on that occasion to the said W. S. Prince were privileged communications, from which the law withdraws an inference of malice, and the same are not malicious, nor can you consider them as evidence of malice in the utterances charged in the complaint in this cause.

"(B) I charge you, gentlemen of the jury, that if you believe the evidence of W. S. Prince that the defendant on November 30, 1907, an occasion previous to that mentioned in the complaint, told said Prince that the plaintiff had stolen 15 bales of the Birmingham Industrial Company's cotton, or had taken 15 bales of the company's cotton to Columbus, Ga., and sold the same, and converted the proceeds to his own use, and you believe from the evidence that the defendant had the right at the time to believe that the said Prince was the superintendent of the Birmingham Industrial Company's farm, and that the words were spoken with a view to the protection of the company's interests against the plaintiff, then I charge you that such statement by the defendant was a privileged communication, even though the defendant may have entertained improper or even unjust suspicion of the honesty of the plaintiff.

"(C) I charge you, gentlmen of the jury, that if you believe from the evidence that the language imputed

to the defendant by the plaintiff in this action was used in good faith, in answer to an inquiry from one having an interest in the information sought, the communication is at law a privileged communication, and you cannot impute malice to the defendant, unless you believe further from the evidence that the defendant made the statement imputed to him without knowledge on his part of facts sufficient to reasonably induce a fair-minded man to believe that plaintiff had been guilty of converting to his own use part of the cotton crop grown by the share croppers, as defined in the contract in evidence in this cause, which was deliverable to the Birmingham Industrial Company.

"(D) I charge you, gentlemen of the jury, that an embezzlement can be only of personal property of another in the possession of the embezzler, and that larceny can be only of personal property in the possession, actual or constructive, of the owner of the thing stolen, and if an accusation of theft be made in connection with words, language, or statements which show the things alleged to have been stolen were at the time of the imputed theft in the possession of the accused, the accusation must be understood to impute embezzlement, and not larceny, and will not support an action of slander imputing a charge of larceny."

Charge 8 refused to the plaintiff was as follows:

"The court charges the jury that if they believe from the evidence that the defendant made the statement as charged in the complaint, and that when he made such statement the defendant knew it was untrue, then that would be conclusive evidence of malice on the part of the defendant."

W. T. STEWART, BOWMAN, HARSH & BEDDOW, and W. K. TERRY, for appellant. The court erred in sus-

taining defendant's objection to the question propound-
ed to the plaintiff as to how a certain indebtedness be-
came due him.—Newell on Slander & Libel, 771.  Plain-
tiff was entitled to show an agreement with the presi-
dent of the company as to the indebtedness that had
accrued on the farm at the time of the sale.  The ques-
tion was not an attempt to vary a written contract.—
*Walker v. The State,* 117 Ala. 52.  The court erred in
giving charge one for the plaintiff.—Newell on Slander
& Libel, 297.  The court should have given plaintiff's
charge 8.—Newell on Slander & Libel, 325.  The court
erred in giving defendant's charge 20.—*Easely v. Moss,*
9 Ala. 266; Newell on Slander & Libel, 531.  The court
erred in giving charge B for the defendant, also in giv-
ing charge C.—Newell on S. & L. 498 and 523.  The
court erred in refusing to set aside the verdict and
grant a new trial.—*Bir. Bank v. Bradley,* 116 Ala. 142.

A. LATADY, and JOHN M. CALDWELL, for  appellee.
Counsel discuss the 1st, 2nd, 3rd and 4th assignments
of error, but without citation of authority.  They in-
sist that the court did not err in giving charge 20.—
*Lawson v. Hicks,* 38 Ala. 285.  Charge B was correctly
given.—*Easely v. Moss,* 9 Ala. 268.  Charge C was
proper.—*Lewis v. Herrick,* 16 N. Y. 674,  Charge D
was properly given.—*Lee v. Crump,* 146 Ala. 655; *Pal-
mer v. Anderson,* 33 Ala. 78; *Williams v. Cauley,* 18
Ala. 206.

SAYRE, J.—Appellant sued appellee  for slander.
The complaint was that defendant had falsely and ma-
liciously, in the presence of divers persons at the Colo-
nial Hotel in the city of Birmingham, on April 4, 1908,
charged the plaintiff with the larceny of 15 bales of
cotton.  The plea was not guilty.  Plaintiff had sold
and conveyed a plantation in Russell county to the

Birmingham Industrial Company on June 12, 1907. Three days later the parties to the conveyance, the industrial company acting through Bradshaw, its president, had entered into a contract in writing, under which plaintiff had entered upon the management of the plantation for the industrial company for the then current year. The alleged slanderous words were spoken concerning transactions of plaintiff in that management. For his part, plaintiff showed publication of the slanderous matter by utterance of the words charged in the presence of one Mrs. Christlieb and another at the time and place laid in the complaint, and, as showing malice in fact, the utterance of words of similar import on other occasions and in the presence of other persons. Plaintiff claimed, as we gather from the record, that the industrial company was indebted to him in a considerable sum under their contract, and that he had appropriated the cotton in pursuance of his rights thereunder. The contract was in evidence. To further sustain his contention, plaintiff offered to show that there had been an agreement between himself and the defendant, as president of the industrial company, about the indebtedness, apart from the writing, and anyhow, that some of it had accrued for money furnished by him for making crops on the land cultivated by share croppers. The words imputed to defendant in the complaint, and by plaintiff's witness, imported the commission of a crime by plaintiff, and were actionable per se. Unless they appeared to have been used on an occasion which rendered them privileged, the presumption is that they were false and malicious, and no other evidence of malice was necessary. Townsend on Slan. & Lib. § 388. But the gist of the action was a false and malicious injury to plaintiff's character, and, in addition to the presumption in his favor, the plain-

tiff might show his good character and the falsity of the charge made against him as proving malice in fact and as affecting the measure of recovery. However, the plaintiff did not offer to go into the question of his character until it had been attacked by the defendant, and was permitted without objection to testify that he had never stolen cotton from the industrial company or any one. Plaintiff also testified, without let or hindrance, that at the date of the contract the industrial company became indebted to him, thereunder, in a large sum for advances made by him to the wage hands on the plantation and for cultivating the crop up to that date. In the course of the examination the court ruled that evidence of advances made after the date of the contract would be admitted, but otherwise as to advances made theretofore. To this limitation no objection was taken. Subsequently the witness was asked how the indebtedness, to which he had already deposed, came due to him; whether some of it was not for money furnished to share croppers. The court sustained an objection to this question, and that ruling is made the subject of the first assignment of error. We do not understand that this ruling was a departure from the ruling previously made, or that counsel so understood it. The question asked seemed to assert some distinction between the right of plaintiff in dealing with cotton raised by wage hands and that raised by share croppers. But we discover no distinction which in itself would affect the truth of the charge alleged to have been made by defendant against plaintiff. In either case the rights of plaintiff were substantially the same.

Plaintiff was asked by his counsel: "Was there any agreement between you and Bradshaw, as president of the industrial company, about the indebtedness which

had accrued on the farm, at the time of the sale?" An objection that this question sought to vary by parol the terms of a written contract was sustained. If plaintiff's appropriation of the cotton was honestly made in reliance upon an agreement made between him and Bradshaw, plaintiff had the right to make proof of an agreement which authorized the appropriation for the purpose of showing his intent, and thereby the falsity of the alleged slander, and, further, Bradshaw's knowledge of its falsity; and this, without impinging upon the rule that, as between the parties in any proceeding to enforce the contract, the writing became the sole memorial of all prior and contemporary agreements not merely collateral thereto.—*Walker v. State,* 117 Ala. 42, 23 South. 149. It may be conceded, therefore, that the objection urged to the question was untenable, and that there would have been no error had the court ruled otherwise. But error will not be imputed if the action may be sustained on any ground; and we think it may. Neither the question, nor the record aliunde, discloses the nature or relevancy of any agreement, proposed to be shown, to any issue in the cause, and so we are left to speculate whether, if plaintiff had been allowed to answer, anything of consequence to the plaintiff would have appeared. Herein the case differed from *Walker v. State, supra.*

When Bradshaw came to testify with reference to the occasion of the publication charged in the complaint, while confessing a conversation with Mrs. Christlieb and the use of words not complimentary to plaintiff, his version so far differed from hers that a variance between pleading and proof would have resulted from the jury's unqualified acceptance of his testimony.—*Williams v. Bryant,* 4 Ala. 44; *Easley v. Moss,* 9 Ala. 266.

In this state of the evidence, the general charge for the plaintiff was properly refused.

Prince, by agreement superintendent in charge of the plantation, his salary being paid in equal proportions by plaintiff and the industrial company, testified that Bradshaw had repeated the alleged slander to him in the presence of two or three white men and a number of negroes. Bradshaw at the time was on the plantation looking after the interest of the industrial company. Communications by an employer to his superintendent, having reference to the protection and care of the property committed to him, are to be considered as confidential, and, if made without express malice, are not actionable, though unjust and expressed in terms which would support an action under other circumstances.—*Easley v. Moss, supra.* They are conditionally privileged, the law withdrawing the legal inference of malice, and giving protection upon condition that actual or express malice, as contradistinguished from that malice which is implied by law where a wrongful act is intentionally done, be not shown.—*Lawson v. Hicks,* 38 Ala. 279, 81 Am. Dec. 49. It is said in Newell on Slander & Libel, p. 509, that the privilege is lost if the extent of the publication be excessive, or the language used go beyond the demands of duty or interest. But the privilege is not defeated by the mere fact that the statement is made in the presence of others than the parties immediately interested, nor that they are intemperate.—*Brow v. Hathaway,* 13 Allen (Mass.) 242. The question is whether the communication is made in good faith in the discharge of some legal or moral duty, or in the fair and honest prosecution of rights or the protection of interests, on one hand, or inspired by ill will, on the other, and that is a question for the decision of the jury. If the communication to

14—167

Prince was privileged under the rule laid down, it should not have been weighed against defendant as going to show actual malice in the communication to Mrs. Christlieb. In charge A the privileged character was asserted with proper hypothesis. Not so in charge B. The publication to Prince may have been malicious, though made with a view to the protection of the company's interest. Both motives may have concurred. If so, there was no privilege.

Charge C should have been refused. The evidence does not show that the defendant made the statement to Mrs. Christlieb in answer to an inquiry, or that the latter had any interest of legal recognition in the subject-matter of the conversation, or that the interest of Bradshaw or the industrial company could have been served, or that defendant supposed they could have been served, by the statement made. No privilege attaches to mere gossip.—Newell, p. 524.

We cannot accede to the proposition of charge D. The language used must be accepted as ordinarily interpreted by laymen. If to the ordinary apprehension it charged larceny, it will not be held to constitute a charge of embezzlement, and so a variance established, for the reason only that as a technical charge of larceny the language was defective, or that a charge of embezzlement would have been more appropriate. Courts will understand language, in whatever form it is used, as all mankind understand it. This is said apart from the question of variance involved.

Charge 8 correctly stated the law. We suppose it may have been refused on the theory that the language attributed to defendant was used on an occasion of privilege. But, as we have seen, no element of privilege entered into that occasion.

For the errors indicated, the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.

DOWDELL, C. J., and MCCLELLAN and MAYFIELD, JJ., concur.