### FOSGATE v. NOCATEE FRUIT CO.

(District Court, S. D. Florida. December 12, 1924.)

No. 980–T.

**1. Pleading ⊚⟳96—Plea should state facts under oath, showing defenses relied on, and not mere denials of plaintiff's pleading.**

Plea should state facts under oath, showing defenses relied on, and not that defendant "denies" allegations of plaintiff's pleading.

**2. Fraud ⊚⟳3—Essential elements in action for damages stated.**

To recover damages for vendor's misrepresentations, purchaser must show that misrepresentations were false, or recklessly made, that vendor knew, or ought to have known, of their falsity, that they were material in inducing contract, and that purchaser was ignorant of their falsity, and was deceived thereby.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraud.]

**3. Fraud ⊚⟳49—Evidence to negative allegations of fraud admissible under general issue.**

Under Laws Fla. c. 10024, § 1, evidence in action for vendor's misrepresentation as to acreage, tending to negative allegations that misrepresentation was knowingly false, that it was recklessly made, and that vendor knew, or ought to have known, representation was false, held admissible under general issue, and other matters must be specially pleaded.

**4. Evidence ⊚⟳434(11)—Oral testimony as to transactions relating to execution of option held admissible in action for fraud.**

Oral testimony relating to transaction at and before execution of option to purchase land was admissible in action for damages for vendor's fraudulent misrepresentations as to acreage, parol evidence rule not being applicable, since action was not one to enforce option.

**5. Fraud ⊚⟳48—Pleas traversing vendee's ignorance held proper.**

In action for damages for inducing acceptance of option by false representations as to acreage, pleas traversing plaintiff's ignorance of property, his reliance on vendor's representations of acreage, or setting up his familiarity with property, were proper.

**6. Fraud ⊚⟳48—Plea setting up vendor's ignorance of acreage and honest intention held demurrable.**

In action for damages for inducing acceptance of option by false representations as to acreage, plea setting up vendor's ignorance of actual acreage, and an honest intention in making representation, *held* demurrable.

**7. Fraud ⊚⟳48 — Plea denying assignment of option stricken as improper.**

In action for damages for inducing acceptance of option by false representations as to acreage, plea denying assignment of option as alleged should be stricken as improper pleading.

**8. Fraud ⊚⟳48—Plea alleging purchaser knew vendor did not know area of land held demurrable.**

In action for damages for inducing acceptance of option by false representations as to acreage, plea that purchaser knew vendor did not know area of land was demurrable, since vendor was not thereby necessarily relieved from results of misrepresentation; pleading being more strictly construed against pleader.

**9. Fraud ⊚⟳48—Equitable plea held insufficient to show estoppel or fraud on plaintiff's part.**

In action for damages for misrepresenting acreage of land in giving option, equitable plea *held* insufficient to show estoppel or fraud on part of plaintiff in obtaining option or procuring the representation as to acreage.

At Law. Action by L. E. Fosgate against the Nocatee Fruit Company. On plaintiff's motion to strike and demurrers to pleas. Motion sustained in part, and denied in part.

See, also, 299 F. 963.

Marks, Marks & Holt, of Jacksonville, Fla., for plaintiff.

Leitner & Leitner, of Arcadia, Fla., and Mabry, Reaves & Carlton, of Tampa, Fla., for defendant.

CALL, District Judge. [1] The defendant filed, by leave of court, seven amended pleas, the substance of each, omitting that the defendant "denies" certain matters in the counts, which I do not understand to be good pleading at law. The plea should state facts, showing the defenses relied upon, which his oath to the plea affirms as true, not that he "denies" said allegations in plaintiff's pleading, and I have therefore taken the affirmations only in the pleas as a test of their sufficiency.

(1) Plea, to first additional count: The defendant says "that on and between said dates, and at all times charged in the declaration, where such representations, are alleged to have been made, the defendant did not know the actual area of said property, and made the alleged statements in the contract and option honestly and in the utmost good faith."

(2) "But that the plaintiff, at the time of taking said option, well knew the said property and the boundaries thereof, and in taking the said option relied upon his own judgment of the value of said property and the other properties described in said option, and upon his own estimate of the area thereof."

(3) "But, on the contrary, the defendant says that the citrus grove was the chief value of said property, and its value was estimated by the plaintiff and defendant for the purposes of said contract and option, by the bearing capacity and average yield in fruit, age of said grove, with which the plaintiff was familiar, and about which he was well and truly advised at the time and long before the dates of taking said contract and said option."

(4) Denies that sale was made to the assignee upon the terms alleged in the count and the option assigned on the condition that 175 acres of grove, etc., should be conveyed.

(5) "But, on the contrary, says the plaintiff then and there well knew that the defendant did not know the area of said grove and lands surrounding."

(6) "But defendant says that the said estimate of area was put into said contract at the special instance and request of the plaintiff, after the plaintiff had been advised by the defendant that the defendant did not know the number of acres in said grove or in the lands surrounding, and was simply copied into the option from the contract without further discussion or directions in reference thereto."

(7) Equitable Plea.—The plaintiff bought a large portion of the citrus fruit from said grove of the crop of 1920–21; in the summer of 1921 he purchased all of the fruit produced that year by the grove and the other groves covered by the option; that the price per box was arrived at by a thorough inspection and careful calculation of the number of boxes of the various kinds of citrus fruit on the properties; that during the season of 1921–22 the fruit from the groves was picked by the defendant and delivered to the packing houses mentioned in the option, then in the possession of and being operated by the plaintiff, as directed by him; about the time the entire crop was marketed in the late spring of 1922, the plaintiff opened negotiations with the defendant for the purchase of different groves and properties mentioned in the option; that the groves and tracts were known to both plaintiff and defendant by local names, which local names had been used by the plaintiff and defendant in their transactions in handling the fruit, and were used to designate the tracts in the contract and option; that the Nocatee grove was a consolidation of eight tracts, each tract being designated in the contract and option by its particular name; that said negotiation resulted in a verbal agreement upon the price and terms of sale of all the property, real and personal, for $350,000; that during said negotiations plaintiff asked defendant for detailed information of fruit production for several preceding years, and such information was furnished from the books of defendant; that plaintiff made no inquiry and defendant gave no information about the area of said properties until after the transaction had been verbally made, when it came to preparing memoranda from which the contract might be drawn, covering the agreed purchase and sale of the properties; plaintiff then stated to the defendant that he desired to form a company to take over said properties, and for that reason desired to state in the contract the approximate number of acres in the several properties, whereupon the plaintiff and defendant designated the several properties in their memoranda by the name, and placed opposite each property, the approximate number of acres which they believed to be in grove and lands surrounding in each separate tract. When the Nocatee grove was reached, the defendant explained to the plaintiff that it did not know the number of acres in said grove, nor in the lands surrounding; that it was difficult to make an estimate, owing to the irregular shape, and consisting of various town lots and blocks in the town of Nocatee, and the existence of the railroad, but it had always believed that the grove contained about 175 acres, and lands surrounding approximately 300 acres. Thereupon the plaintiff stated it was all right about the acreage, regardless of what the actual number should prove to be, but that he wanted the estimate placed in the contract for the reason previously explained; that the estimate of acreage was put in solely because the plaintiff desired it, and with full knowl-

edge on the part of plaintiff that defendant did not know, and was not purporting to represent, the acreage of said property; that the price agreed upon for all of the properties, real and personal, was a lump sum, and was intended to cover all the holdings of the defendant, and to this end the plaintiff stated to defendant that he desired the estimate of quantities to be liberal to insure this end. It was thoroughly understood between them that plaintiff was familiar with the holdings, and that all of said holdings should go under the contract, real and personal, regardless of the quantity of each; that the chief value of said property was groves, grove equipment, and personal property used in the cultivation of same, and the purchase price for same was arrived at chiefly by the average fruit production of the groves; that after the plaintiff had made the initial payment of $15,000, and the first further payment of $35,000, the plaintiff failed to care for said groves, as he was bound to do under the contract, and thereupon, at the solicitation of plaintiff, the defendant guaranteed the bill for fertilizer in the sum of $8,000, but the plaintiff still being unable to meet the payments and care for the properties according to the contract, and in the month of November, 1922, the plaintiff advised the defendant that he could not carry out his contract and must forfeit the same, and asked the defendant if it would not, in consideration of his age and misfortune, give him a still further chance in the form of an option for six months to buy or sell the property, and this the defendant did, solely out of consideration for the plaintiff; whereupon plaintiff and defendant calculated the amount which would be due on the basis of the original purchase price, after deducting therefrom the expense incurred by defendant on account of the default of plaintiff. The option was given, and at the same time an obligation was given plaintiff to allow him the net income from said properties, if the plaintiff should exercise said option, which defendant did. Prior to giving said option plaintiff had been allowed by the defendant to market 21 carloads of fruit from said property; that plaintiff knew defendant would not take less than the price fixed for said properties in said option, which price was fixed as heretofore stated, and that the area of said properties was not material, and that said price was fixed with reference to the whole, and in no sense with reference to any unit or portion thereof; that in March, 1923, the plaintiff advised

defendant that he had arranged with Chase to finance the exercise of said option, and would exercise said option, and asked for information with reference to the number of boxes of fruit shipped by defendant during the marketing season, etc., whereupon defendant promptly furnished the information requested. Subsequently Chase had the Nocatee grove surveyed, and informed defendant that the grove was 40 acres short, and the unimproved land 35 acres, and requested a reduction of $35,000 in the price; whereupon defendant informed Chase that it stood ready to convey according to the option; that nothing further was said by Chase or the plaintiff until after the option had been exercised, and the defendant had conveyed the properties for the consideration set out in said option and the transaction fully closed, whereupon the plaintiff made demand for an abatement of the purchase price on account of the shortage in area; that plaintiff was fully advised by Chase that defendant had refused to abate the purchase price, and the plaintiff procured Chase to demand and receive the deed of conveyance from this defendant; that plaintiff knew at the time he so procured Chase to demand and receive the deed that defendant would not deed any particular number of acres, nor convey at all except on the basis of conveying what the defendant owned and for the price stated; that both Chase and plaintiff knew that defendant would not convey the property, except to convey what it owned for the price stated, and, so knowing, the plaintiff willfully and designedly refrained from making any complaint to this defendant until the conveyance to Chase had been executed and delivered, and for the fraudulent purpose of causing the defendant to believe that no claim for abatement in price would be further made, and defendant did so believe, and would not otherwise have conveyed said properties.

Each of these pleas are made applicable to the second and third additional counts. The plaintiff interposed motions to strike and demurrers to each of the seven pleas.

The several counts to which these pleas were interposed are in substance as follows:

"The first count in effect charges that the defendant, in consideration of the plaintiff relinquishing any claim he might have under a contract to purchase the properties, executed an option to him, his heirs and assigns, to purchase the properties covered by the contract of sale at a price stated within a stated time; that within the life of the option the plaintiff assigned it to a certain

person, who within the option period exercised it and took over the properties; that the consideration for the assignment was that the assignee should pay the plaintiff the sum of $50,000; that the option, covering several pieces of real estate and personal property, contained the representation that the Nocatee grove, one of the pieces of real property covered by the option, contained approximately 175 acres, and lands surrounding aggregated 300 acres; that plaintiff believed and relied upon this representation, and was induced thereby to take the option, when in truth and fact the Nocatee grove contained approximately 135 acres and the surrounding lands all containing about 225 acres; that defendant well knew that said representation as to acreage of the Nocatee grove and surrounding lands were false, and that the plaintiff was ignorant of same, and relied upon such representations; that the grove was of great value, to wit, $1,000 per acre, and the surrounding lands of the value of $100 per acre, making a difference in value of more than $40,000; that, relying upon the representations of the acreage of the Nocatee grove and the lands surrounding, the plaintiff negotiated the transfer of the option on the acreage basis to assignee; that on the 29th day of March, 1923, the assignee of the option exercised his right, and tendered the payments reserved in the option, and demanded deeds, when it was discovered that the Nocatee grove and surrounding lands did not contain the acreage represented, notwithstanding which discovery the assignee exercised the option and received deeds to the property covered therein; that plaintiff, by reason of the shortage in acreage, was compelled to receive from the assignee a sum less by $25,000 than he would, had the acreage been as represented, and claims this amount as his damages by reason of the false representations.

"The second count is like the first, except that, in lieu of alleging the knowledge of the defendant of the falsity of the representations, it is alleged that the representations were made recklessly and without authentic information as to the truth or falsity thereof, and made for the purpose of inducing the plaintiff to rely and act thereon.

"The third count is like the first, except, in lieu of alleging knowledge of the falsity of the representation of acreage, it alleges that the defendant for several years had been the owner of said lands, and from time to time had inspected, worked, cultivated, and fertilized the properties, had

3 F.(2d)—39

gathered crops and other products therefrom, and had been afforded ample opportunity to know said lands, and every part thereof, so that it either knew or should have known of the falsity of said representation."

[2] This is an action in tort for damages resulting to plaintiff by reason of representations as to the acreage of grove and surrounding lands described in a certain option given him by defendant and transferred by him to a third party. In order for the plaintiff to recover, it is necessary for him to show that the representations were untrue, or recklessly made, or that he knew or ought to have known of their falsity, that they must have been material in inducing the plaintiff to enter into the contract, and the plaintiff must have been ignorant of their falsity and been deceived thereby. The defendant, in addition to the pleas now in question, pleaded the general issue of not guilty.

[3] One of the grounds of attack is that the facts pleaded are covered by the general issue. The Legislature of Florida, by chapter 10024, prescribed the office of the plea of not guilty in tort actions as follows:

Section 1: "In actions for torts the plea of not guilty shall operate as a denial only of the breach of duty or wrongful act alleged to have been committed by defendant and not of the fact stated in the inducement and no other defense than such denial shall be admissible under that plea; all other pleas in denial shall take issue on some particular matter of fact alleged in the declaration."

In this case the wrongful act complained of was the making of the representation, knowing it to be false, thereby inducing the plaintiff to enter into the contract. This is the first additional count. In the second, that it was recklessly made without authentic information; and, in the third, that the defendant knew or ought to have known the falsity of the representation. Any evidence tending to prove the contrary of these would be admissible under the general issue. If the defendant desires to traverse other matters, they must be specially pleaded.

[4] Another ground of objection to these pleas is that they call for oral testimony of transactions at or before the execution of the option, to vary or add to the written instrument. This last position is not in my judgment tenable. This is not a proceeding between the parties to enforce the writing. This is an action in tort, and the only office the written option could perform is to

prove that the representation was made as alleged. The Alabama courts have had before them the question involved in this ground. "The proceeding, of course, was not for the enforcement of the contract between the Singer Company and defendant. * * * If the appropriation was not with the intent to defraud the employer, but was honestly made to pay the office rent, in reliance upon the agent's statement, sought to be proven, as the defendant claimed to have been the case, as to a part of the funds received by him, it would be manifestly unjust to deny the defendant the right to make proof of the promise of the agent, as going to show his intent in making the appropriation. The rule that, as between the parties to a written contract, its terms cannot be added to, altered, or varied by parol stipulations, made at or before its execution, has no application to the case. That will apply when the contracting parties come to litigate their rights evidenced by the contract." Walker v. State, 117 Ala. 52, 23 So. 152.

"Plaintiff was asked by his counsel: 'Was there any agreement between you and Bradshaw, as president of the Industrial Company, about the indebtedness which had accrued on the farm, at the time of the sale?' An objection that this question sought to vary by parol the terms of a written contract was sustained. If plaintiff's appropriation of the cotton was honestly made, in reliance upon an agreement made between him and Bradshaw, plaintiff had the right to make proof of an agreement which authorized the appropriation for the purpose of showing his intent, and thereby the falsity of the alleged slander, and, further, Bradshaw's knowledge of its falsity; and this, without impinging upon the rule that, as between the parties in any proceeding to enforce the contract, the writing became the sole memorial of all prior and contemporary agreements not merely collateral thereto." Phillips v. Bradshaw, 167 Ala. 207, 52 So. 665.

In the first case there was a criminal prosecution, and in the second a suit for slander; but I cannot see why the principles applied in these two cases do not apply with equal force in the instant case. And, applying the principle in the instant case, it is evident that the objection on that ground is not well taken.

In the case of Carson v. Houssels, 51 S. W. 290, the Texas Court of Civil Appeals, in the second headnote, has this to say: "On an issue of the materiality of false representations as to the number of cattle in a herd, made by the seller to the buyer, evidence that the herd, as actually sold, was worth more than the price paid, and that, had the buyer known that it contained only the number which it actually did contain, he would nevertheless have bought it for the same price, is admissible." In that case the bill of sale was given, describing the herd of cattle as containing 300 head, more or less. The herd contained only 225 head.

[5] Any pleas which traverse the ignorance of the plaintiff of the property described in the option, his reliance upon the representation of acreage as the inducing cause for entering into the contract, or setting up his familiarity with the property, are proper to be pleaded.

[6] Now, testing the pleas by the principles announced, the first plea sets up the ignorance of the defendant of the actual area of the grove and its honest intention in making the representation. This plea does not state a defense to the first count, and fails utterly to be a response to the second and third counts. The demurrer will be sustained.

The second plea traverses the fact that the plaintiff relied upon the representation as an inducement to enter into the contract, and states a defense to each of the counts. The demurrer will be overruled, and the motion to strike denied.

The third plea is much to the same effect, and the allegations might possibly be proven under the second plea; but under the circumstances it is better that it should remain in the record, and therefore the demurrer will be overruled and the motion denied.

[7] The fourth plea simply "denies" that the option was assigned as alleged. This method of pleading is not permissible in actions at law. In any event, it would simply go to the damages. The motion to strike will be granted.

[8] The fifth plea alleges that plaintiff knew that the defendant did not know the area of the grove. This might be true, and yet the defendant, under the circumstances surrounding the parties, might not be relieved from the results of its representation, and the pleading must be most strictly construed against the pleader. The demurrer will be sustained.

The sixth plea alleges that the representation was placed in the contract at the special instance of the plaintiff, after he knew that defendant was ignorant of the exact area of the grove, and that it was copied in-

to the option. What I have said above as to the fifth plea applies to this one also. The demurrer will be sustained.

[9] The seventh plea is interposed on equitable grounds. The only equity I can see in the plea is based on the claim of estoppel. While the brief of counsel says something about fraud, I find no facts pleaded which would show fraud on the part of the plaintiff in obtaining the option, or in procuring the representation of the area of the grove; and the same may be said as to the claim of estoppel. Many of the allegations of the plea would be admissible in defense of the action at law, under the principle before announced, and, the plea being devoid of equity on the ground of fraud or estoppel, the plea will be stricken.