UNITED STATES DISTRICT COURT 
 EASTERN DISTRICT OF LOUISIANA 
SMITTY'S SUPPLY, INC. CIVIL ACTION 
VERSUS NO: 16-13396 C/W 17- 
 7191 C/W 17-4711 
LINDSAY MORGAN HEGNA SECTION: "S" (3) 
 ORDER AND REASONS 
 IT IS HEREBY ORDERED that the Motion for Judgment as a Matter of Law, or
Alternatively, for a New Trial, filed by plaintiff, Lindsay Morgan Hegna (Rec. Doc. 454), is
DENIED; 
 IT IS FURTHER ORDERED that the Motion for Judgment as a Matter of Law, or
Alternatively, for a New Trial, filed by plaintiff, Stephen Kelley (Rec. Doc. 453), is DENIED.
 BACKGROUND 

 This matter is before the court on motions for judgment as a matter of law, or
alternatively, for a new trial, filed by plaintiffs, Stephen Kelley (Rec. Doc. 453) and Lindsay
Morgan Hegna (Rec. Doc. 454). Plaintiffs move the court to set aside the jury's verdict in favor
of the defendant, Smitty's Supply, Inc. 
 Plaintiffs Kelley and Hegna (hereinafter, sometimes collectively “plaintiffs”) filed suit
against Smitty's alleging that Smitty's breached an oral employment agreement to establish a
Phantom Stock Plan and a Stock Appreciation Rights Plan (collectively, “Stock Plans”),
implement the Stock Plans, and designate plaintiffs as participants in the Stock Plans. In
addition, Kelley alleged that Smitty's had breached a severance agreement made with him, which
guaranteed him a severance payment if he resigned for good cause or was terminated without
cause. 
 Following a five-day jury trial, the jury returned a verdict in favor of defendant. The jury
found that neither Hegna nor Kelley had proved by a preponderance of the evidence that they
had an oral contract with Smitty's which granted them rights under the Stock Plans. The jury
further found that Stephen Kelley had proved that he had a valid contract with Smitty's that
granted him rights for severance payment, but that he had not proved that he resigned for good
reason. 

 Plaintiffs have moved for judgment as a matter of law, arguing that the verdict was
against the great weight of the evidence. Alternatively, they seek a new trial based on alleged
erroneous evidentiary rulings at trial. Finally, as an additional ground for a new trial, Kelley
argues that he was unfairly prejudiced by evidence and testimony related to Hegna.
 DISCUSSION 
Legal Standards 
 Pursuant to Rule 50(b), if the court does not grant a motion for judgment as a matter of
law during a jury trial, the movant may file a renewed motion for judgment as a matter of law,

and include an alternative or joint request for a new trial under Rule 59. “In evaluating [a Rule
50(b)] motion ... the court is to view the entire record in the light most favorable to the
non-movant, drawing all factual inferences in favor of ... the non-moving party, and leaving
credibility determinations, the weighing of the evidence, and the drawing of legitimate
 2 
inferences from the facts to the jury.” Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir.1994)
(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). A Rule 50(b) motion for
judgment as a matter of law is granted 
 only if the facts and inferences point so strongly and overwhelmingly in favor of one
 party that the Court believes that reasonable men could not arrive at a contrary
 verdict . . . . On the other hand, if there is substantial evidence opposed to the
 motions, that is, evidence of such quality and weight that reasonable and fair-minded
 men in the exercise of impartial judgment might reach different conclusions, the
 motions should be denied. 

Brown v. Bryan County, OK, 219 F.3d 450, 456 (5th Cir. 2000) (citations omitted). 
 Granting a Rule 50 motion “is not a matter of discretion, but a conclusion of law based
upon a finding that there is insufficient evidence to create a fact question for the jury.” In re
Litterman Bros. Energy Sec. Litig., 799 F.2d 967, 972 (5th Cir.1986) (citing Lubbock Feedlots,
Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 269 n. 22 (5th Cir.1980), cert. denied, 107 S.
Ct. 1373 (1987)). 
 Rule 59 of the Federal Rules of Civil Procedure provides that the court may grant a
motion for a new trial on some or all of the issues “after a jury trial, for any reason for which a
new trial has heretofore been granted in an action at law in federal court.” Fed.R.Civ.P.
59(a)(1)(A). Rule 59 does not enumerate the specific grounds for which a new trial can be
granted. See id. However, “a district court may grant a new trial if the court finds that the verdict
is against the weight of the evidence, the damages awarded are excessive or inadequate, the trial
was unfair, or prejudicial error was committed in its course.” McFadden v. Wal–Mart Stores,
2006 WL 3087164, *2 (E.D. La. Oct. 27, 2006) (citing Smith v. Transworld Drilling Co., 773
 3 
F.2d 610, 613 (5th Cir.1985)). Whether to grant a motion for new trial is within the sound
discretion of the trial court. Id. (citing Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir.1998)).
However, “[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has
crept into the record or that substantial justice has not been done, and the burden of showing
harmful error rests on the party seeking the new trial.” Del Rio Distrib., Inc. v. Adolph Coors
Co., 589 F.2d 176, 179 n. 3 (citing 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 2803, at 31–33 (3d ed.1973)). 
Stepehn Kelley's Motion for Judgment as a Matter of Law 
 1. Severance 

 Kelley sued for severance benefits based on a provision which granted him severance
benefits in the event that Kelly should "be terminated by employer without cause or by employee
with good reason."1 Kelley contends that he is entitled to judgment as a matter of law on his
severance claim, because the weight of the evidence does not support a finding that he lacked
good reason for his resignation. In fact, Kelley alleges that Smitty's presented no evidence at trial
that Kelley's resignation was not for good reason, and thus reasonable jurors could not arrive at a
verdict for Smitty's on this question. 
 However, at trial, Smitty's owner Edgar Smith, III ("Ed Smith") testified that Kelley did
not resign for good reason, but rather because he knew he was about to be terminated for cause.2

Thus, the jury was tasked with making a factual determination of Kelley's motivation in
 1 Joint Trial Exh. 2 
 2 Trial Transcr. 722:5-6. 
 4 
resigning at the time he did. The trial testimony reflects that on cross-examination, Kelley
admitted that he had been counseled several times for poor performance.3 Smitty's also
introduced into evidence Kelley's personal notebooks in which he noted that Smitty's was
dissatisfied with his performance. For instance, in one entry Kelley acknowledges Smith's
dissatisfaction with Kelley's furnishing him financials that were off by four million dollars.4 In
addition, two Employee Performance Counseling Forms were introduced into evidence,5
including one which stated: 
 Your overall performance has been unacceptable to this point in your employment
 relationship with us and I consider your performance to be harmful to the
 company, which should be remedied and cured immediately. You are being
 advised that if I see future infractions following this notice in any area of concern
 as outlined above, further disciplinary action will be taken which may result in
 termination of employment.6 
Less than one month after execution of that counseling form, Kelley resigned. 
 Based on this evidence, the court cannot conclude that the facts and inferences point so
strongly and overwhelmingly in favor of Kelley on the issue of his motivation that the court
believes that reasonable jurors could not arrive at a verdict in favor of Smitty's. A finding that
Kelley resigned because he anticipated his termination for cause, rather than for good reason, is a
reasonable conclusion. Moreover, Kelley's argument that the fact that Smitty's may have had
 3 Trial Transcr. 439:21-25. 
 4 Trial Transcr. 671:19-22, 464:5-13. 
 5 Joint Trial Exhs. 58 & 59. 
 6 Joint Trial Exh. 58. 
 5 
cause to terminate Kelley, does not necessarily mean that Kelley also did not have good reason
to resign, fails. The jury was asked to resolve the following interrogatory: Do you find by a
preponderance of the evidence that Stephen Kelley has carried his burden of proving that he
resigned from Smitty's for "good reason"? The jury responded no, and ample evidence supports
such a finding. Accordingly, defendant Stephen Kelley's motion for judgment as a matter of law
on his severance pay claim is denied. 
 2. Breach of oral contract 
 Kelley also argues that he is entitled to judgment as a matter of law on his claim for
breach of oral contract. Kelley claimed that Smitty's, through its owner, Ed Smith, made an oral

promise to create the Stock Plans and designate Kelley as a participant. Testimony elicited at
trial established that at the time he was recruited, Kelley was told that "[o]ther incentives are
being discussed for key employees and if formalized" he would participate."7 Kelley testified
that the "other incentives" referenced were the Stock Plans, which were adopted in December
2014.8 
 At trial, Smith testified that Smitty's "adopted the plan as a whole, but we never
implemented or we never personalized those plans."9 He further stated that "there is a plan, but
there were never awards made under the plan to any specific people."10 Moreover, "the plan

 7 Joint Trial Exh. 2. 
 8 Trial Transcr. 406:10-12. 
 9 Trial Transcr. 645:14-15. 
 10 Trial Transcr. 684:11-13. 
 6 
always was based on performance. You had to – you had to do and keep the job you were hired
to do to be a participant in any plan."11 
 As discussed above, testimony regarding Kelley's poor performance was adduced at trial,
and apparently the jury accepted it. Accordingly, the court cannot conclude that the facts and
inferences point so strongly and overwhelmingly in favor of Kelley on the question whether the
alleged oral obligation was made and if so whether it was breached, that they would lead the
court to believe that reasonable jurors could not arrive at a verdict in favor of Smitty's. Thus,
Kelley's motion for judgment as a matter of law on this issue is denied. 
Lindsay Hegna's Motion for Judgment as a Matter of Law 

 1. Breach of oral contract 
 Hegna also contends that she proved at trial the existence of an oral contract, that it was
breached, and that no reasonable juror could have found against her on this claim. 
 The Stock Plans were adopted in December 2014, and Hegna testified that during her
tenure at Smitty's, Smith reaffirmed his promise that she would participate in the Stock Plans.12
Smith testified that he remembered speaking to Hegna about "a plan that would be attractive for
long-term employees . . . and what [they] were trying to get together to do to keep people for
long term," which he described as the "phantom stock plan."13 He further testified that he "didn't

tell her that she was going to be a participant. [He] told her that there would be an opportunity
 11 Trial Transcr. 645:23-25. 
 12 Trial Transcr. 781:3-7. 
 13 Trial Transcr. 642:12-25. 
 7 
for her to be a participant in the plan."14 As noted above in connection with Kelley's motion,

Smith testified that Smitty's never implemented the plans, never personalized the plans, and
never made awards under the plans. Also, Smith testified that the plan was conceived as an
incentive for long-term employment, and Hegna "didn't work there long enough, nor did she
perform her job."15 
 Smith also testified to his concerns about Hegna's performance, which began prior to her
formal employment at Smitty's.16 His complaints regarding Hegna centered on her interpersonal
difficulties, especially difficulty working with salespeople.17 Smitty's president Chad Tate
testified specifically about Hegna's difficulty working with Luiz Macedo, an Hispanic board

member charged with expanding the company's business in Latin America.18 At trial, Hegna
denied that she had a problem with Macedo and that her refusal to cooperate with Macedo was
motivated by racism.19 However, this testimony was impeached by text messages between Hegna
and a Smitty's board member, in which she admitted her animosity towards Macedo and her
racism towards Mexicans.20 

 14 Trial Transcr. 643:3-5. 
 15 Trial Transcr. 684:25-685:1. 
 16 Trial Transcr. 647:8-25. 
 17 Trial Transcr. 660:4-5 
 18 Trial Transcr. 602:21-603-2 
 19 Trial Transcr. 864:9-14, 867:21-22. 
 20 Deft's Trial Exh. 3A. 
 8 
 On this record, the court cannot conclude that the facts and inferences point so strongly
and overwhelmingly in favor of Hegna on the question whether the alleged oral obligation was
made or breached, that it would lead the court to believe that reasonable jurors could not arrive
at a verdict in favor of Smitty's, and Hegna's motion for judgment as a matter of law on this issue
is denied. 
 In sum, plaintiffs' theory of recovery was that Ed Smith made an oral promise to them to
pay them bonuses in the millions of dollars, conditioned neither on their performance or length
of tenure with the company. The jury did not accept that, and the court finds that plaintiffs have
not satisfied the standard required to reverse the jury's finding. 

 Kelley and Hegna's Motion for New Trial 
 1. New trial requested due to evidentiary rulings 
 Plaintiffs also argue that a new trial is justified because the court made evidentiary
rulings which unfairly prejudiced them and "stacked the deck" in Smitty's favor. Specifically,
they point to the admission at trial of the text messages between Hegna and a member of Smitty's
board of directors, which were off-color and in which Hegna acknowledged her racial prejudice.
Plaintiffs argue that the messages should have been excluded based upon the court's pre-trial
rulings, which limited such evidence to items for which a proper foundation was laid, and

instructed that any evidence of workplace behavior was required to be clearly causally related to
the plaintiffs' discipline or termination. Plaintiffs urge that because the messages were not
discovered until after Hegna's termination, they are not causally related to it and should have
been excluded. 
 9 
 Hegna's claim of entitlement to participation in the Stock Plans made her job
performance relevant. As discussed above, Smitty's contended that Hegna's off-color remarks
and presenting obstacles to the success of the Hispanic board member, contributed to its negative
perception of her performance. These activities, prior to her termination, were clearly relevant.
By denying her difficult relationship with Macedo and any possible racist motive for it under
oath at trial, Hegna opened herself up to impeachment by the text messages. Even though they
were discovered after her termination, they are valid impeachment evidence of her statements at
trial. Accordingly, the court finds that a proper foundation was laid for their admission, and their
admission does not warrant a new trial. 

 2. "Marubeni" evidence 
 Plaintiffs also contend that the court committed prejudicial error by excluding the so-
called "Marubeni" evidence. The "Marubeni" evidence relates to Smitty's counter-claims against
the plaintiffs, in which it claimed that plaintiffs were liable to Smitty's for damages because they
caused the sale of Smitty's to the Marubeni company to fall through. The court dismissed those
counterclaims, and noted that related evidence was therefore irrelevant. 
 In moving for new trial, plaintiffs argue that they were prevented from introducing
evidence related to Marubeni that was relevant for reasons independent of the counterclaims.

However, prior to trial, the parties reached a joint stipulation that all documents related to
Marubeni and the Marubeni claims would be excluded, but that plaintiffs could testify about
their work with Marubeni during their employment. In fact, the plaintiffs were allowed to testify

 10 
about their work on the Marubeni project.21 Ed Smith also testified extensively about the

plaintiffs' work related to the Marubeni deal. Suzan Jagger's deposition testimony regarding their
roles in connection with Marubeni was also allowed. 
 What the court did exclude was evidence or testimony exploring an alleged promise by
Ed Smith to pay a bonus to plaintiffs if the Marubeni deal went through. This alleged promise
was distinct from the alleged promise to implement the Stock Plans, was not relevant to the
existence of the Stock Plans – the issue before the jury – and had the potential to confuse the
jury.22 
 On this record, the court finds that it did not err in excluding the evidence in question.

Accordingly, new trial based on the exclusion of the Marubeni evidence is denied.
 3. California law suit evidence 
 Prior to trial, the court denied Smitty's motion to exclude evidence of a lawsuit filed in
California related to Smitty's alleged practice of mis-blending its products that resulted in the
mislabeling of its motor oil, transmission fluid, coolant, and gear oil products. The court
reasoned that because Kelley contended that Smitty's allegedly questionable blending practices
contributed to his "good reason" for resigning, the suit was potentially relevant. At trial, based on
the rationale that some, but not necessarily all, of the evidence related to the lawsuit could be

admissible, the court modified its ruling to state that it would address the question of the

 21 Trial Transcr. 353:8-355:18 (Kelley testimony regarding potential sale and due
diligence); 363:24-364:9 (same). 
 22 Trial Transcr. 610:20-612:22. 
 11 
admissibility of the California law suit evidence as it arose in trial.23 At trial, on defendant's

objection, the court excluded plaintiffs' Exhibit 29, a print-out of an Orange County Breeze on-
line newsletter, discussing the California suit. Kelley argues in his motion for new trial that the
court erred in excluding this evidence. However, the record reflects that at trial, Kelley did
testify to the issue of mis-blending of product in California, which he confirmed with other
Smitty's employees and executives.24 Smitty's president Chad Tate also testified at length about
Smitty's blending department having products banned.25 Because Kelley did testify to his
awareness of the California mis-blending and that it contributed to his reason for resigning, the
exclusion of additional evidence related to the California mis-blending lawsuit provides no basis

for a new trial. 
 4. Improper remarks before jury 
 Plaintiffs also argue that prejudicial error occurred when defense counsel referenced one
of their attorneys' military service, and one of their attorneys' attendance at McDonough 35 High
School, in an effort to ingratiate themselves with jurors. With respect to the reference to
McDonough 35, Hegna's counsel objected, which was sustained, and counsel for Smitty's moved
on. With respect to counsel's military service, no objection was made. The court finds that this
inappropriate testimony did not prejudice the jury to an extent that would warrant a new trial.

 5. Guilt by association - Stephen Kelley 
 23 Trial Transcr. 152:17-153:4. 
 24 Trial Transcr. 384:1-19. 
 25 Trial Transcr. 621:7-622:1. 
 12 
 Kelley has argued additionally that he is entitled to a new trial due to presumed "guilt by 
association” with Hegna. Kelley claims to have been negatively affected by the scandalous 
material related to Hegna that was admitted at trial, specifically the inflammatory text messages. 
However, the text messages were provided to all counsel in April 2018, and Kelley’s counsel 
was present at every deposition and reviewed every motion filed in this matter, and nevertheless 
joined in the motion to consolidate these matters filed in February 2019. Rec. Doc. 331. 
Moreover, the racial texts were not between Hegna and Kelley, and Kelley was never questioned 
about racial prejudices or his knowledge of Hegna’s racial bias. Kelley never moved to sever his 
case from Hegna's. Accordingly, a new trial is rejected on this basis. 
 For all of the foregoing reasons, 
 IT IS HEREBY ORDERED that the Motion for Judgment as a Matter of Law, or 
Alternatively, for a New Trial, filed by plaintiff, Lindsay Morgan Hegna (Rec. Doc. 454), is 
DENIED; 
 IT IS FURTHER ORDERED that the Motion for Judgment as a Matter of Law, or 
Alternatively, for a New Trial, filed by plaintiff, Stephen Kelley (Rec. Doc. 453), is DENIED. 

 New Orleans, Louisiana, this 5th day of November, 2019. 

 fil. 
 Mg Ml Ge — 
 UNITED STATES DISTRICT JUDGE 

 13