(95 South. 34)

**KENNEY et al. v. GURLEY. (6 Div. 504.)**

(Supreme Court of Alabama. Jan. 4, 1923.)

**1. Venue ⬉8—Libelous matter actionable at place of posting or receipt by addressee.**

Libelous matter uttered through the mails is actionable either at the place of posting or at the place of receipt by the addressee.

**2. Libel and slander ⬉93—Pleas of privileged communication must negative malice.**

Pleas of conditional privilege are of the category of pleas of confession and avoidance, and are required to negative the presence of malice in the exercise of conditional privilege asserted in bar of a recovery, particularly if the complaint avers that the matter declared on was maliciously published.

**3. Libel and slander ⬉51(1), 101(4)—Malice makes privileged communication actionable, and burden is on plaintiff to prove malice.**

The burden of proof to show actual or express malice in a privileged utterance is upon the plaintiff, and actual or express malice is requisite to render actionable, matter that is or is found to be conditionally privileged.

**4. Libel and slander ⬉41 — "Conditionally privileged communication" defined.**

A conditionally privileged communication comprehends all those cases where the author of the alleged mischief acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform.

[Ed. Note.—For other definitions, see Words and Phrases, Conditionally Privileged Communication.]

**5. Libel and slander ⬉109, 112(2)—Manner and sufficiency of proof of malice in conditionally privileged communication stated.**

Actual or express malice in a communication conditionally privileged may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of publication, and the like, but in either case, if the evidence adduced is equally consistent with either the existence or nonexistence of malice, there can be no recovery.

**6. Libel and slander ⬉50½, 109—Exceeding privilege in certain cases does not destroy privilege, but may be considered by the jury.**

Merely exceeding conditional privilege, in consequence of excitement, or the use of intemperate language, does not destroy the privilege, but such unnecessarily defamatory expression upon a privileged occasion is, in a proper case, evidence to be considered by the jury in determining the presence of actual or express malice.

**7. Libel and slander ⬉44(1), 123(8)—Court, not jury, decides whether communication privileged where evidence for exercising privilege undisputed.**

A communication, by personal, authoritative letter, addressed and sent to the parent or guardian of a dismissed student, of the reason for the student's dismissal or for the denial of readmission to the institution is a privileged communication, and, where the evidence descriptive of the occasion for exercising the privilege is undisputed, the inquiry whether the occasion was privileged is a question of law, to be decided by the court, not by the jury.

**8. Libel and slander ⬉44(1)—Communications by dean of college and by doctor thereof to parents of student held conditionally privileged.**

In an action for libel, communications by dean of a women's college and a doctor in charge of its students advising the parents why their daughter could not be permitted to return to the college as a student were conditionally privileged communications.

**9. Libel and slander ⬉109—Evidence held insufficient to show requisite malice in privileged communication.**

Evidence, or inferences therefrom, in an action for libel, *held* insufficient to justify jury's finding that the requisite or express malice characterized the conditionally privileged letters of a dean of a women's college and a doctor thereof, informing parents that their daughter, a student at the college, was infected with a venereal disease, and that circumstances seemed to indicate that she "had not been living right."

**10. Libel and slander ⬉109 — Doctor's error in diagnosing disease of student not evidence of malice in communication to parents.**

In an action for libel, based upon communications by a dean of a women's college and a doctor thereof informing the parents of a student that their daughter was infected with a venereal disease, *held*, even though the diagnosis made by the doctor was erroneous, that error of judgment, unimpeachable in respect of its bona fides, would not afford evidence of actual or express malice.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by Velma Gurley, by her next friend, against John A. Kenney and others. Judgment for plaintiff, and defendants Kenney and Landers appeal. Reversed and remanded.

---

This is an action of libel. The suit was originally brought by the next friend of Velma Gurley, a minor the subject of the alleged libel against Tuskegee Normal and Industrial Institute, Robert R. Moton (its principal), Dr. John A. Kenney, and E. S. Landers, who was dean of women of the school. A verdict and judgment for $5,000 was awarded plaintiff against Dr. Kenney and Dean Landers, the industrial institute being eliminated as a party defendant in consequence of rulings on the complaint, and principal Moton being entirely exonerated, after evidence taken, by a special instruction given the jury at the instance of the defendant. The substance of the alleged libelous matters was written expressions asserting that Velma Gurley had a venereal disease, and that from indications stated she had not been "living right."

The counts of the amended complaint submitted to the jury averred that the publication of the alleged libelous matter was made at Bessemer, Ala., a place within the jurisdiction of the court trying the cause. In these counts it is also averred that the publication of the alleged libelous matter was falsely and maliciously done. The libelous matter declared on is contained in two letters, which are reproduced below. In the evidence—and that without dispute—appears a letter previous to those declared on from Velma Gurley to the defendant Dean Landers. Observing their chronological order, this letter, together with those from which the alleged libelous matters declared on are taken, are as follows:

"Bessemer, Ala., Sept. 30, 1919.

"Dear Mrs. Landers: I arrived safe at home last night, and my mother met me. She was very glad to see her baby again. I am feeling very well this morning, and mother told me to write you and let you know how I am getting along. Mrs. Landers, if I get well in time to make my class will it be all right for me to come back to school, because I hate to be out of school this whole term, and I want to know if I may come back, because I don't think I will be sick very long. I am hoping for a favorable reply.

"Yours truly,        Velma Mae Gurley."

"The Tuskegee Normal and Industrial Institute,
        John A. Kenney, Medical Director.

"Tuskegee Institute, Ala., Oct. 6, 1919.

"To the Parents of Velma Gurley: At the request of the dean of the women's department, I am advising you that Velma was kept in our hospital ward as a result of venereal infection and because of the fact she was sent home. If it has not already been done, it is advisable that she is put under a good physician.

"Very truly,
        "John A. Kenney, Medical Director."

"The Tuskegee Normal and Industrial Institute,
        Dean's Office.

"Tuskegee Institute, Ala., Oct. 14, 1919.

"Dear Madam: I regret to have to inform you that it will be impossible for your daughter, Velma Gurley, to return to the school. The inclosed note from our physician explains itself; it seems to indicate that Velma has not been living right, and I feel that she can best be helped by being frank in the matter. She is such a young girl that it is a great pity that this is so and I hope you will have the best Dr. you can get to treat her for this trouble. Being a mother myself I can sympathize with you. With deep regret, I am,

"Yours truly,        E. S. Landers, Dean."

Besides general traverses, the defendants Kenney and Landers asserted the defense that the derogatory matters declared on were privileged. The circumstances inspiring and surrounding the authors of these letters, as well as their official relation to the Industrial Institute, and, therethrough, to Velma Gurley and to more than 600 other female students in the institution, are averred (for instance, in plea 5, to which, among others, demurrer was overruled) as follows:

"That the plaintiff ought not to recover thereunder for that whatever letter or letters were written and published by defendants concerning the plaintiff were privileged, in that plaintiff had some months prior thereto been a student in the Tuskegee Normal and Industrial Institute, one of the defendants, and at or near the time complained of was an applicant for readmission as a student in said institution, the said institution being one of the state schools in this state, located at Tuskegee, Ala., and she was at or near the time complained of a patient in the John A. Andrews Memorial Hospital, which is located on the premises of said institution, and is used, among other things, for the treatment of the diseases of the students of said institute; that the defendant Robert R. Moton is and was at the time complained of the principal of said institute; that the defendant John A. Kenney was at said time the physician of said institute, and as such his business was to look after the sick of said school, and he had direct supervision of the said hospital, in which the teachers and students of said institute, as well as the private patients of said John A. Kenney, were treated; that the said E. S. Landers was the head matron or dean of the women's department of said institute, and as such had charge of the female students of said institution, looking after their conduct and health; that any communication made or letter written and published as complained of in this case concerning the plaintiff was made or published in good faith, and without malice, and was upon a subject-matter in which the defendants felt and had an interest, or in reference to which each had a duty, social or moral, and said communication or communications were made or letters written and published to a person or persons who felt and had a corresponding interest or duty, and not otherwise; in fact, said letter or letters were written to or published to plaintiff's parent or parents by the defendant in their official capacities or positions as aforesaid."

Resulting from the facts and circumstances recited, legal questions arose on the trial, and are reserved for review here, that are

sufficiently set forth in the subjoined opinion.

C. W. Hare, of Tuskegee, and Huey & Welch, of Bessemer, for appellants.

Defendants have at all times resided in Tuskegee, all the letters were written there, and defendant's pleas to the jurisdiction should have been sustained as against demurrer. Code 1907, § 6110; 207 Ala. 40, 92 South. 193. The position and relation of the defendants present a case of absolute privilege in communicating the subject-matter of the letters to the mother of the plaintiff. 195 Mich. 649, 162 N. W. 277, L. R. A. 1917D, 779; 76 Okl. 229, 184 Pac. 946, 7 A. L. R. 895; 23 N. D. 579, 137 N. W. 831; 115 Mich. 140, 73 N. W. 135; 15 Ala. App. 331, 73 South. 225; 35 Cyc. 1134; 18 Am. & Eng. Ency. Law, 1038; 88 Ala. 169, 7 South. 268, 16 Am. St. Rep. 31; 161 Ala. 292, 49 South. 909. A physician is not liable for advising another person, who is entitled to know that his patient has venereal infection, even if afterwards it develops that his diagnosis was a mistake. 104 Neb. 224, 177 N. W. 831, 9 A. L. R. 1250; 115 Mich. 140, 73 N. W. 135; 17 R. C. L. 366. Defendants' motion for a new trial should have been granted. The jury were charged that there could not be a finding for the plaintiff, unless they found malice on the part of defendants, and there was no evidence of malice. 21 Nova Scotia, 334; 3 Kan. 244; 25 App. Div. 397, 49 N. Y. Supp. 704; 134 Ind. 660, 34 N. E. 439; 88 Neb. 699, 130 N. W. 439; 22 Neb. 644, 36 N. W. 128; 31 Ga. 309, 76 Am. Dec. 687; 205 Ala. 529, 88 South. 855; 148 Ala. 527, 41 South. 683; 150 Ala. 445, 43 South. 856; 199 Ala. 28, 73 South. 976; 181 Ala. 408, 62 South. 194; 178 Ala. 627, 59 South. 647, Ann. Cas. 1915B, 129; 167 Ala. 188, 51 South. 1000; 161 Ala. 181, 49 South. 888; 55 Fla. 417, 46 South. 325.

Beddow & Oberdorfer, of Birmingham, for appellee.

Pleas to the jurisdiction were properly held subject to demurrer. Age-Herald v. Huddleston, 92 So. 193, is without application to this case. The matters set out in the pleas merely constituted the communication qualifiedly privileged. 17 R. C. L. 362. Defendant must also allege in his plea of qualified privilege that he acted without malice. 25 Cyc. 458; 161 Ala. 181, 49 South. 888. The question of malice is purely an inquiry of the jury, and they may consider the character and quality of the words in determining the question of malice. 38 Ala. 279, 81 Am. Dec. 49. When the communication is privileged, slight evidence of actual malice in an action for libel will throw the burden of proof back on defendant. 52 Hun, 614, 5 N. Y. Supp. 341; 93 Cal. 59, 28 Pac. 845; 30 Ill. App. 349; 57 Conn. 120, 17 Atl. 366; 81 Mich. 280, 46 N. W. 5, 9 L. R. A. 102, 21 Am. St. Rep. 524; 30 N. Y. 20; 71 Tex. 424, 9 S. W. 449; 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794. The motion for new trial was properly overruled. The verdict was not excessive, if the jury believed there was malice. Newell, Slander & Libel (3d Ed.) 405; 181 Ala. 408, 62 South. 194.

McCLELLAN, J. [1] The complaint, for libel uttered through letters, disclosed by clear allegations that jurisdiction of the cause of action declared on was in the circuit court of Jefferson county, serving the Bessemer division. Like considerations justified the trial court in sustaining demurrers to defendants' pleas in abatement to the jurisdiction. Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40, 92 South. 193, 196, where it was said, in expression of general rule, that libelous matter uttered through the mails is actionable either at the place of posting or at the place of receipt by the addressee. In that case newspaper publications were held not to be within the stated general rule, so for reasons adequately given in the opinion. See, also, 17 R. C. L. § 120, p. 370.

It is insisted for appellants (defendants) that, in the circumstances outlined in plea 5 (quoted in the statement ante), among others, the trial court erred in several of its rulings because of the mistaken notion that the written matter declared on and shown in the evidence was not within the category of matter absolutely privileged. It will suffice to say that the standard definitions of matter absolutely privileged and of matter qualifiedly, conditionally privileged, given in Lawson v. Hicks, 38 Ala. 279, 285, et seq. (81 Am. Dec. 49), cast the subject of this action for libel in the category of matter qualifiedly or conditionally privileged. Hence no error affects the judgment on account of the view, sanctioned by the trial court, that the matter was but conditionally privileged.

[2, 3] Some of the defendants' pleas of privilege, to which demurrers were sustained, omitted to deny that malice characterized the asserted exercise by defendants of conditional privilege through the publication of the matter declared on. Pleas of conditional privilege are of the category of pleas of confession and avoidance, and are required to negative the presence of malice in the exercise of conditional privilege asserted in bar of a recovery, particularly if, as here, the complaint avers that the matter declared on was maliciously published. Ferdon v. Dickens, 161 Ala. 181, 194, 49 South. 888; 25 Cyc. pp. 458, 459, subhead B. While it is essential that such a special plea should negative malice in the exercise of conditional privilege characterizing the utterance declared on (this in order to give the special plea the scope necessary to render it immune from the objection that it is not as broad as it professes to be), yet the burden of proof

to show actual or express malice in a privileged utterance is upon the plaintiff, actual or express malice being requisite to render actionable matter that is or is found to be conditionally privileged. Newell on Slander and Libel (3d Ed.) § 396; Butterworth v. Todd, 76 N. J. Law, 317, 324, 70 Atl. 139; 25 Cyc. p. 412.

[4] In Lawson v. Hicks, 38 Ala. 279, 285 (81 Am. Dec. 49), conditional privilege was defined as:

" 'Comprehends all those cases,' where the author of the alleged mischief acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform."

[5] When words are conditionally privileged, "the law simply withdraws the legal inference of malice, and gives a protection upon the condition that actual malice, or express malice, or malice in fact, * * * is not shown," the burden of proof being, as stated, upon the plaintiff in respect of the establishment of the presence of such malice. Lawson v. Hicks, supra; Smith v. Agee, 178 Ala. 627, 59 South. 647, Ann. Cas. 1915B, 129; Phillips v. Bradshaw, 167 Ala. 199, 209, 52 South. 662. Such malice, actual or express, may be shown by evidence of previous ill will, hostility, threats. rivalry, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of publication, and the like.

"But, in either case, if the evidence adduced is equally consistent with either the existence or nonexistence of malice, there can be no recovery, for there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged communication." Newell on Slander and Libel (3d Ed.) § 397; Age-Herald Pub. Co. v. Waterman, 202 Ala. 665, 670, subds. 18, 19, 81 South. 621; 25 Cyc. p. 524; Butterworth v. Todd, 76 N. J. Law, 317, 324, 325, 70 Atl. 139.

[6] Merely exceeding the privilege, in consequence of excitement or the use of intemperate language, does not destroy the privilege; but such unnecessarily defamatory expression upon a privileged occasion is, in a proper case, evidence to be considered by the jury in determining the presence of actual or express malice. Smith v. Agee, 178 Ala. 627, 635, 636, 59 South. 647, Ann. Cas. 1915B, 129; Newell (3d Ed.) § 398. In respect of the untruth of the defamatory matter uttered, it is said in the last-cited section of Newell's work:

"The fact that the statement is admitted or proved to be untrue is no evidence that it was made maliciously, though proof that defendant knew it was untrue when he made it would be evidence of malice. If the defendant is in a position to prove the truth of his statement, he has no need of privilege; the only use of privilege is in cases where the truth of the statement cannot be proved. A mere mistake innocently made through excusable inadvertence cannot in any case be evidence of malice."

The defendant Kenney was in 1919, and had been since 1902, the medical director of the Tuskegee Normal and Industrial Institute. His entirely worthy professional qualifications for that service was shown without dispute. It was established that he was a doctor and man of good reputation. His duties as medical director included supervision of the school's hospital and of the sick at the school, as well as the treatment of the sick among the student body and the teachers, and also the supervision of the health and sanitary conditions at the institution. Dean Landers, the other defendant, was the dean of women, in active charge of that department. There were in 1919 between 600 and 700 girls attending the school. The hospital was maintained by the school's authorities for the purpose its presence would indicate. The duties of the defendant Landers, dean of women included supervision and charge of the female students, comprehending their health, conduct, and, necessarily, the moral conditions prevailing among the female students. The Tuskegee Normal and Industrial Institute was, according to the Americana (volume 27), called into being by an act of Congress. It was created by act of the Alabama Legislature approved February 10, 1881. Acts Ala. 1880-81, pp. 395, 396. This act was amended by the act approved February 16, 1883 (Acts Ala. 1882-83, pp. 392, 393). If the ordinances of. its creation have been since amended, we are not advised of it. It is a state institution, and has been the beneficiary of appropriations payable out of the state's treasury. The last quadrennial appropriation appears to have been that made by the act approved September 30, 1919. Gen. Acts 1919, pp. 793, 794.

Velma Gurley returned to the school about the beginning of the session in September, 1919. Very soon after her arrival at the institution she went, voluntarily, to the hospital, having at that time a swelling in her groin. She was examined by the medical director, and specimens from her subjected to approved laboratory tests. From the examinations made, her trouble was diagnosed as gonorrhea, an infectious malady of the genital area. After treatment in the hospital for 18 days she was sent by the dean (Landers) to her mother at Bessemer. Within two or three days after her departure from the school the dean received from Velma Gurley the letter reproduced in the statement ante. This letter made inquiry with reference to her return to the school. A week later the medical director wrote the letter of October 6, 1919, sent it to the dean, who, inclosing it, also wrote and posted to Velma Gurley's mother, and to no one else, the letter of date October 14, 1919, reproduced in

the statement ante. Expressions from these letters are made the bases of this action for libel.

[7, 8] Upon the dean of women and the medical director, within the sphere of their proper functions, there rested the duty to promote, to protect and to preserve the moral, sanitary, and health conditions related to the institution; duties that comprehended affirmative obligations to the student body, to teachers, and to the reputation of the institution. The authority to exclude from association with the school any who may be or become undesirable from either physical malady or moral obliquy is not debatable. When a student's relation to the institution is severed by direction of its authorities, it is not only natural, but justly to be expected as a part of that duty, that the parent or guardian of the dismissed student should be advised of the cause of dismissal; and this is especially true with respect to a school of a public character, schools to the maintenance of which governmental funds are devoted. The communication, by personal, authoritative letter addressed and sent to the parent or guardian of a dismissed student of the cause or reason for the student's dismissal or for the denial of readmission is a privileged occasion. Where, as here, the evidence descriptive of the occasion is undisputed, the inquiry whether the occasion was privileged is a question of law to be decided by the court, not by the jury. 10 Ann. Cas. pp. 1152, 1153; Newell's Work (3d Ed.) § 499. According to the undisputed evidence, the act of advising Velma Gurley's mother of the cause or reason for the refusal to permit her return to the institution was a privileged occasion. The process and act of communication between the medical director and the dean of women of the institution with respect to the condition of Velma Gurley while under the care and supervision of the medical director and the dean, and subsequently when the return of the girl to the institution was under consideration, as well as the act of communicating to the parent alone the institution's reason for refusing to permit her return, were privileged occasions.

[9, 10] A careful consideration of the whole evidence requires the conclusion that the motion for new trial should have been granted upon the ground that neither the evidence nor any inference from evidence justified a finding by the jury that the requisite actual or express malice characterized the conditionally privileged utterances recited in the complaint. There was no extrinsic evidence of such malice. The letters themselves afford no intrinsic evidence of the entertainment by either the medical director or the dean of actual or express malice upon the occasion of the exercise by them of the conditionally privileged occasion to thus communicate the matter described to the parent alone. The writings from these officials of the institution declared their sympathetic, friendly interest in the girl. They evidence no other purpose than that which duty to her, to themselves, and to the institution justified. The expression that the circumstances seemed "to indicate that Velma had not been living right" did not transcend the multiform obligations resting upon the dean and the medical director in discharging their duties in the premises. Their good faith and freedom from unworthy motive is not in the least reflected upon in the evidence. The application of requisite professional skill and care to the diagnosis of her condition at the time she was under immediate medical supervision of the director and his assistants is fully established in the evidence. Even if the diagnosis then made, after the professional care and skill shown to have been then availed of, was erroneous, or subsequently proved to be a mistake, that error of judgment, unimpeached in respect of its bona fides, would not serve to afford evidence of actual or express malice. Newell, § 398.

In consequence of the view prevailing, it is not necessary to consider or decide other assignments of error urged in brief for appellants.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.