Charles S. CONLEY, Plaintiff,

v.

SOUTHERN IMPORT SALES, INC., a corporation, d/b/a Atlanta Wig Boutique, Defendant.

Civ. A. No. 74–148–N.

United States District Court, M. D. Alabama, N. D.

Sept. 19, 1974.

Robert L. Cheek, and Charles S. Conley, Montgomery, Ala., for plaintiff.

N. T. Braswell, III, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for defendant.

## FINDINGS OF FACT

VARNER, District Judge.

This cause is submitted for final judgment on the pleadings, pretrial order, and evidence taken in open Court wherein both parties appeared by counsel.

Plaintiff, a practicing attorney, claimed damages suffered as a result of the publication by Defendant, Southern Import Sales, a/k/a Atlanta Wig Boutique, of an allegedly libelous letter. At the trial of this case on September 16, 1974, the evidence established, and this Court finds, the following facts. Plaintiff was retained as legal counsel by the Defendant in 1972. On October 19, 1972, there was a trial in the Montgomery County Court of a case styled R. W. Brooks, d/b/a Brooks Heating and Ventilating Service v. Atlanta Wig Company (hereinafter referred to as the Brooks case). Plaintiff, along with a representative of Southern Import Sales, appeared at this trial, although it is not clear what, if any, action was then taken. A judgment for $250.00, the amount claimed, was duly entered against Atlanta Wig Company. On November 6, 1972, Plaintiff wrote to Defendant that the Brooks case could be settled for $150.00, and he requested Defendant to forward a check in that amount if it wished him to settle the case. The check requested was sent to Plaintiff, who tendered it to Hon. Elno Smith, attorney for Brooks Heating and Ventilating. Mr. Smith returned the check and rejected the settlement. On February 1, 1973, Plaintiff returned the check to Defendant with a letter stating that the settlement had not been accom-

plished. Plaintiff's fee for the above case was $75.00, paid in advance.

On February 1, 1974, Defendant, through its agent, wrote the allegedly libelous letter to Plaintiff as follows:

"Charles S. Conley
315 South Bainbridge Street
P.O. Drawer 4038
Montgomery, Alabama 36104

 Re: Brooks Heating & Air Cond.
 Service vs: Atlanta Wig Co.
 Case No. 5684

"Dear Sir,

"On November 16th, 1972, you were sent a payment of $150.00 that you requested to close this case, and a copy of your letter is enclosed for you to review.

"We have since been required to pay this bill, being as judgment was awarded, as we failed to show up for court, and were required to pay the full bill. Based on your letter (copy enclosed), we understood this case was setteled (sic). As it turns out, your letter was mis-leading (sic) and for all practical matters just plain un-true (sic).

"We hereby demand that you return the $150.00 we paid to you, plus $6.60 'court cost', plus the $150.00 we paid to you as a retainer for your services that were not received.

"Payment is expected within five days after receipt of this letter, or we will be forced to contact the Alabama State Bar Assc. for their advice.

"Thank you,

/s/ James M. Crow
James M. Crow
Vice President

JMC/ac
encl;
cc; Alabama Bar Assc.
cc; Montgomery Chamber of Commerce
cc; State of Alabama Att. General"

█ Undenied direct evidence shows that the Alabama State Bar and the Alabama Attorney General received copies of the letter. Mr. William H. Morrow, general counsel for the Alabama State Bar, wrote to Plaintiff on March 13, 1974, on behalf of the Grievance Committee, and requested a written explanation of the complaint contained in the allegedly libelous letter. Plaintiff has not been informed of final disposition of the matter. The Plaintiff has received no direct communication from the Alabama Attorney General or from the Montgomery Chamber of Commerce regarding this matter. The only evidence of publication of the letter to the Chamber of Commerce is the notation on the bottom of the letter which this Court construes as an admission of the Defendant's agent who wrote the letter that he mailed a copy thereof properly addressed with sufficient postage.

## CONCLUSIONS OF LAW

█ The letter in question contains statements that the Plaintiff, a practicing attorney representing the Defendant in the Brooks case, was paid $150.00 and $6.60 court costs for settlement of the Brooks case, and $150.00 as a fee for Plaintiff's services. The letter points out that the Defendant, after having paid the settlement, understood that the case had been settled, that because of that belief it "failed to show up for court and were (sic) required to pay the full bill". Independent evidence showed the full bill to be $250.00. The letter then contained a demand that the Plaintiff return the $150.00 payment for settlement, the $6.60 payment for court costs, and the $150.00 fee "for your services that were not received". In short, the letter charges that the Plaintiff-Attorney received a fee of $150.00 for representing the Defendant in the Brooks case when he did nothing in order to earn the fee and that he kept the unearned fee, the court costs and the sum advanced for settlement for his own purposes. This letter was calculated to injure an attorney in his profession. Its natural and fair meaning would tend to bring the Plaintiff into public hatred, contempt or ridicule and injure him in

his profession. It is difficult to conceive how an attorney could be more completely injured in his reputation than by reports that he had received fees and failed to give any services therefor, that he had allowed a default judgment to be taken against his client after having been paid to represent them, and that he had converted funds paid by his client for settlement to his own use to the detriment of both his client and the party on the other side of the litigation. It is, therefore, the opinion of this Court that the letter contained libelous statements regarding the Plaintiff, it having been shown that the amount of the fee was only $75.00, that the Plaintiff did appear in Court with a representative of the Defendant at the time evidence was taken on which the judgment was entered, and that the proposed $150.00 settlement of the case was declined by the plaintiff in the Brooks case, and the check for the proposed payment and the costs thereunto pertaining were returned to the Defendant by the Plaintiff within a reasonable period of time.

■ A statement imputing a want of integrity or capacity in an attorney is actionable per se. Bleecker v. Drury, 149 F.2d 770 (2 Cir.); Kihneman v. Humble Oil & Refining Co., 312 F.Supp. 34 (D.C.La., 1970). It, therefore, clearly appears that the statements were false when made and that the Defendant's agent who made the statements had reason to know that they were false or might have ascertained the truth thereof upon reasonable inquiry and recklessly neglected to do so.

■ The Defendant then insists that the libel was not published. Obviously, the notation at the foot of the letter was the statement of the Defendant that copies were sent to the Alabama Bar Association, the Attorney General of the State of Alabama, and the Montgomery Chamber of Commerce with knowledge that the letters would, in the normal course of business, be opened and read by someone in each of these offices. Evidence clearly shows that they were opened and read in two of the offices, and while there was no direct evidence that anyone in the Chamber of Commerce opened such a letter, this Court judicially knows that the notation at the foot of the letter itself was an indication by the Defendant, in the nature of an admission, that a copy of the same was mailed to the Montgomery Chamber of Commerce, properly stamped and addressed, and that the sender had every reason to believe that the same would be duly opened and considered by some person at that organization. The burden of proving publication of a libel is on the Plaintiff, but a prima facie case of publication is made when the Plaintiff proves that the libel in an envelope properly stamped and addressed was mailed to a third party. Harrell v. Alabama Farm Bureau Mutual Casualty Ins. Co., 287 Ala. 259, 251 So.2d 220; Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86. The Defendant, having admitted the mailing, had the burden of going forward with the evidence to counteract the presumption of delivery. In the absence of further evidence thereunto pertaining —and the Defendant did not deny at the trial that it mailed the letter duly and properly addressed nor did it offer evidence that it was not received by the Chamber of Commerce—this Court finds that the preponderance of the evidence shows that the libel was publicized to the Montgomery Chamber of Commerce as well as to the Attorney General and the Bar Association.

■ The Defendant insists that the correspondence was privileged against suit therefor for libel. Alabama recognizes a qualified privilege in holding that, when the publisher of libel acts in a discharge of his public duty, whether legal or moral, which the ordinary exigencies of society or his own private interests, or even that of another, calls upon him to exercise, then that writing is privileged. Ex parte Cypress, 275 Ala. 563, 156 So.2d 916; Kenny v. Gurley, 208 Ala. 623, 95

So. 34. This qualified privilege reaches a report by a former client of an attorney's unethical conduct to his Bar Association. Toomer v. Breaux, 146 So.2d 723 (La.App., 1962); see 77 A.L.R.2d 493. It may even reach the report of a citizen of an unworthy act of an attorney to the Attorney General, but this Court does not reach this question.

 The effect of the conditional privilege as applicable to the report to the Bar Association is that "the law simply withdraws the legal inference of malice, and gives a protection upon the condition that actual malice, or express malice, or malice in fact, * * * is not shown," Kenney v. Gurley, supra. The burden of proof to establish malice is then cast on the plaintiff. Smith v. Agee, 178 Ala. 627, 59 So. 647; Lawson v. Hicks, 38 Ala. 279; Phillips v. Bradshaw, 167 Ala. 199, 209, 52 So. 662. Such malice may be shown by evidence of previous ill will, or by the mode and extent of publication, and the like, Kenney v. Gurley, supra, 95 So. at 37. It may also be shown by proof that the false statement was known by the libelant to have been false when made. A mere mistake, innocently made through excusable inadvertence, cannot in any case be evidence of malice. Kenney v. Gurley, supra, at 37. The circumstances of the publication of copies of the letter in this case, when considered in the light of the nature of the complaint itself [1], are sufficient to indicate some malice in the publication to three separate organizations even though the publication to the Bar Association was clearly qualifiedly privileged.

While this Court is of the opinion that some malice was shown in this proceeding, there is sufficient vagueness in the evidence of what took place in the Brooks case and succeeding events for this Court to visualize the misunderstanding by the Defendant of the purpose and effect of the appearance by the Plaintiff for them in the Brooks case. The Court is, therefore, of the opinion that the malice was tempered somewhat by a bona fide feeling on the part of the Defendant sufficient to defeat Plaintiff's claim for any substantial punitive damages. The Court is further of the opinion that no substantial actual damages were proven.

 The Plaintiff testified that, after newspaper publicity resulted from the filing of this suit, several people asked him about the reasons for the problem, and he was embarrassed thereby. No substantial effort was made to prove that the Plaintiff had lost anything or that his reputation has been damaged in any way by the libel itself. In fact, the evidence given by an Assistant Attorney General was to the effect that the statements had no effect with him on his regard for the Plaintiff. Damages to a plaintiff's reputation resulting from publication of information about a libel suit filed by the plaintiff are not recoverable. Age-Herald Publishing Co. v. Waterman, 188 Ala. 272, 66 So. 16; Donaldson v. Roberson, 15 Ala.App. 354, 73 So. 223. The theory is that the Plaintiff himself has filed the suit and made a public utterance of the libelous statements thereby compounding the libel on a voluntary basis in a way that the Defendant should not be responsible for. It is, therefore, the opinion of this Court that the Plaintiff is entitled to only nominal damages for the libel published against him.

## JUDGMENT

Pursuant to the findings of fact and conclusions of law entered by this Court on the 19th day of September, 1974, it is the

Order, judgment and decree of this Court that the Plaintiff have and recover of the Defendant in the above-

---

1. The writer of the letter, initially recognized the need for allowing the Plaintiff an opportunity to answer the charges against Plaintiff as indicated by his threat in the body of the letter to expose Plaintiff to the Bar Association, et al. Apparently, before terminating the letter, the writer had a change of heart—a touch of malice—which motivated his immediately exposing Plaintiff's fancied misdeeds.

styled cause the sum of $250.00 damages for the libel alleged in the complaint. It is further

Ordered that the costs in this cause be, and the same are hereby, taxed against the Defendant, for all of which execution may issue.