THOMPSON, Presiding Judge.
West Fraser, Inc., petitions this court for a writ of mandamus ordering the Chambers Circuit Court to transfer this civil action to the Lee Circuit Court.
In support of its petition, West Fraser submitted documents indicating the following. Michael Hunt worked as a “gang saw operator” in West Fraser’s Opelika saw mill. Opelika is in Lee County. On April 4, 2011, while working in the Opelika saw mill, Hunt suffered a severe injury to his right arm. After receiving initial first aid at the saw mill, Hunt was taken to East Alabama Medical Center in Lee County for emergency medical treatment. Hunt did not return to work at West Fraser for more than a year after the accident. On June 27, 2012, West Fraser terminated Hunt’s employment. The notice of termination was mailed from Lee County, and Hunt received the notice at his home in Chambers County.
On March 1, 2012, before his employment was terminated, Hunt filed a complaint in the Chambers Circuit Court seeking workers’ compensation benefits from West Fraser. West Fraser moved for a change of venue from Chambers County to Lee County. Hunt did not oppose the motion, and the Chambers Circuit Court transferred the workers’ compensation action to the Lee Circuit Court.
On August 3, 2012, slightly more than a month after his employment had been terminated, Hunt filed a civil action in Chambers Circuit Court against West Fraser alleging retaliatory discharge in connection with his workers’ compensation claim. West Fraser moved for a change of venue of the retaliatory-discharge action to the Lee Circuit Court. Hunt opposed the motion. On January 17, 2018, the Chambers Circuit Court denied West Fraser’s request for a change of venue without explanation. On February 27, 2013, West Fraser filed a petition for writ of mandamus with this court.
“The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for a writ of mandamus. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 302 (Ala.1986). ‘When we consider a mandamus petition relating to a venue ruling, our scope of review is to determine if the trial court abused its discretion, i.e., whether it exercised its discretion in an arbitrary and capricious manner.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). ‘A writ of mandamus is an extraordinary remedy, requiring the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ Ex parte Nichols, 757 So.2d 374, 376 (Ala.1999).”
Ex parte Yocum, 963 So.2d 600, 602 (Ala.2007).
As legal authority for its assertion that venue should be changed from Chambers County to Lee County, West Fraser relied on § 6-3-7(a), Ala.Code 1975, which governs venue of actions against corporations, and § 6-3-21.1, Ala.Code 1975, the forum non conveniens statute. _ In opposing the motion to transfer the action to Lee County, Hunt argued that, pursuant to § 6-3-7(a)(1) and (a)(3), the action should remain in the Chambers Circuit Court. The portions of § 6-3-7(a) at issue in this case provide:
*289 “(a) AU civil actions against corporations may be brought in any of the following counties:
“(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
[[Image here]]
“(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiffs residence. ...”
As to the requirements of subsection (a)(1), the parties disagree on whether “a substantial part of the events or omissions giving rise to the claim” occurred in Lee County, as West Fraser asserts, or in Chambers County, as Hunt asserts. Hunt contends that, “[i]n no uncertain terms,” his employment was terminated in Chambers County. He explains that, because he was at his home in Lafayette, in Chambers County, when he received the letter informing him that his employment had been terminated, a substantial portion of events, i.e., the termination of his job with West Fraser, occurred in Chambers County. West Fraser, on the other hand, argues in its brief to this court that the decision to terminate Hunt’s employment was made in Lee County, based on acts Hunt performed in Lee County, and notes that the letter was mailed from Lee County; therefore, it says, “all material facts giving rise to [HuntJ’s retaliatory discharge claim occurred in Lee County.”
West Fraser argues that Hunt’s focus on where he received the termination letter is misplaced. In Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356 (Ala.1993), William Pritchett defaulted on the loan he had obtained from SouthTrust Bank of Tuscaloosa County (“the bank”) to purchase a vehicle, and the bank repossessed the vehicle. The bank informed Pritchett that it had sold the vehicle for $500 and applied that amount to the balance of Pritchett’s loan. Pritchett alleged that the vehicle had been sold for more than $500, but only $500 was applied to his balance. He filed a civil action in the Montgomery Circuit Court alleging against the bank claims of fraud, conversion, abuse of process, wanton/willful conduct, and malicious prosecution. The bank sought to have the action transferred to the Tuscaloosa Circuit Court. When the Montgomery Circuit Court denied the motion, the bank filed a petition for a writ of mandamus. Id. at 1358.
The bank asserted that the alleged misrepresentations to Pritchett about the actual resale value of the vehicle were made through telephone calls and through mail sent from Tuscaloosa. However, Pritchett argued that he received those communications in Montgomery and that, therefore, his “injuries” “occurred” in Montgomery County. Id. Our supreme court wrote:
“In Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40, 92 So. 193 (1922), a libel action, this Court established that the term ‘injury’ for purposes of § 6-3-7 refers to the wrongful act or omission of the corporate defendant, not to the resulting damage to the plaintiff, and thus determined that venue for such an injury is proper where a wrongful act was committed, not where the damage resulted. We note that the Court deviated from its Age-Herald rule in the later case of Kenney v. Gurley, 208 Ala. 623, 95 So. 34 (1923). There, this Court held that where libelous matters are passed through the mail from one individual to *290 another, the ‘injury’ takes place where the matter is received. Unlike the holding in Age-Herald, however, the Kenney holding did not hinge upon § 6-8-7; rather, it was based upon a libel action between individuals, and its fact-specific rationale is inapposite here.”
Id. at 1358.
Our supreme court went on to hold that Pritchett’s alleged injuries occurred in Tuscaloosa County, where the bank made telephone calls and sent mail to Pritchett, not in Montgomery County, where Pritch-ett received those communications. Id. We note that the only authority Hunt relies on in support of his contention that the termination occurred in Chambers County, where he received the letter, is Kenney v. Gurley, 208 Ala. 623, 95 So. 34 (1923), which the supreme court rejected in Ex parte SouthTrust Bank of Tuscaloosa County, supra, as a basis for determining venue pursuant to § 6-3-7.
In Ex parte Pikeville Country Club, 844 So.2d 1186, 1189 (Ala.2002), our supreme court explained that it found the analysis of SouthTrust Bank particularly persuasive in interpreting the current version of § 6 — 3—7(a)(1), stating:
“We construe ‘the events or omissions giving rise to the claim’ to be a clear reference to the wrongful acts or omissions of the corporate defendant. Having so construed the statute, we see no reason to abandon the holding of Ex parte SouthTrust Bank. Therefore, we conclude that venue in this case is improper in Covington County as to the [defendant], because the event giving rise to [the plaintiffl’s claims — the mailing of the letter containing the alleged misrepresentations — occurred in Marion County, where the letter was mailed, and not in Covington County, where [the plaintiff] received the letter. See also
Ex parte Wiginton, 743 So.2d 1071 (Ala. 1999).”
In this case, Hunt alleged that West Fraser fired him from his job operating a gang saw at its Opelika saw mill in retaliation for his having filed a workers’ compensation action. The evidence was undisputed that the decision to terminate Hunt’s employment was made in Opelika, and the letter notifying Hunt of West Fraser’s decision was mailed from Opelika. Accordingly, we conclude that all of West Fraser’s alleged wrongful acts occurred in Lee County, not in Chambers County.
West Fraser also disputes Hunt’s contention that venue is proper in Chambers County, pursuant to § 6-3-7(a)(3). Because Hunt resides in Chambers County, if West Fraser does business by agent in Chambers County, then venue in that county would be proper.
West Fraser is an integrated forest-products company that produces lumber, wood chips, fiberboard, plywood, pulp, and news print. Hunt points out that, in response to interrogatories he propounded, West Fraser stated that from September 1, 2009, to September 1, 2012, 16.2% of the total timber it purchased was bought in Chambers County. During that same time, West Fraser purchased $306,106 worth of “parts and supplies” in Chambers County. Those purchases constituted 2.6% of the total West Fraser spent on parts and supplies during that time.
“To establish that a corporation does business in a particular county for purposes of venue, past isolated transactions are inconclusive. Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala.1982). A corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which the corporation was created. Ex *291 parte SouthTrust Bank of Tuscaloosa Cnty., N.A., 619 So.2d 1356, 1358 (Ala.1993). However, this Court has considered extraneous relationships insufficient to constitute ‘doing business.’ For example, in Ex parte Parsons & Whittemore Alabama Pine Construction Corp., 658 So.2d 414 (Ala.1995), and Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala.1984), this Court held that for a construction company and real-estate financing company, respectively, retaining the services of an attorney in a county on a case-by-case basis did not constitute doing business in that county. Hiring an attorney was tangential to the fulfillment of their primary business functions.”
Ex parte Elliott, 80 So.3d 908, 912 (Ala.2011).
Hunt relies on our supreme court’s decision in Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), to support his contention that venue is proper in Chambers County. In that case, our supreme court wrote:
“Scott Bridge notes that it is in the business of constructing bridges and it argues that because it has not built a bridge in Chambers County, it has not ‘done business by agent’ there. The business of Scott Bridge, however, should not be considered so narrowly. To fulfill its principal corporate function of building bridges, Scott Bridge must purchase parts, tools, and equipment with which to perform that principal corporate function. Bond asserts, and Scott Bridge does not refute, that Scott Bridge buys from businesses located in Chambers County supplies that cost in excess of $50,000 a year.”
Id. at 81.
The court noted that, although the record did not include a
“detailed ... description of Scott Bridge’s interactions with its parts supplier in Chambers County ..., the information that this Court does have regarding Scott Bridge’s interactions with its supplier in Chambers County is that Scott Bridge ‘purchased handrail pipe, handrail posts, protection anchors, supports, and shoes which are used in Scott Bridge’s business [of bridge building].’ (Trial court’s order denying the motion for a change of venue.) Scott Bridge could presumably have purchased these materials elsewhere, and thus fulfilled its corporate purpose entirely outside of Chambers County, but spending more than $50,000 per year in Chambers County on materials necessary to bridge construction is sufficient to constitute ‘doing business’ in Chambers County.”
Id. at 82.
West Fraser argues that the purchases it made in Chambers County constituted “such a small portion of its activity as to clearly be nonessential to its principal corporate function.” However, Scott Bridge does not include any facts from which we can conclude that our supreme court determined that Scott Bridge did business in Chambers County based on a certain threshold, such as percentage of total business costs, number of purchases, or the like. In this case, between September 1, 2009, and September 1, 2012, West Fraser purchased approximately 16% of its timber from Chambers County. We cannot say that the purchase of timber is not a business function for which an “integrated forest-products company” like West Fraser was created. Moreover, given the holding in Scott Bridge, we cannot say that the purchase of more than $300,000 in parts and supplies from businesses in Chambers County during the same three-year period does not constitute “doing business” in Chambers County.
*292 West Fraser invites this court to overrule Scott Bridge. Although it makes compelling arguments as to why that decision should be overruled, “this court is bound by the decisions of our supreme court. Ala.Code 1975, § 12-3-16. We are not at liberty to overrule or modify those decisions. Thompson v. Wasdin, 655 So.2d 1058 (Ala.Civ.App.1995).” TenEyck v. TenEyck, 885 So.2d 146, 158 (Ala.Civ.App.2003). Accordingly, in applying Scott Bridge to the facts in this case, we must conclude that West Fraser was doing business in Chambers County and that venue in Chambers County is proper pursuant to § 6-3-7(a)(3). Thus, venue is proper both in Chambers County and in Lee County, where the alleged wrongful acts occurred.
However, West Fraser asserts that, even if venue is proper in Chambers County, the retaliatory-discharge action must be transferred to the Lee Circuit Court pursuant to the forum non conveniens statute, § 6-3-21.1(a), Ala.Code 1975. The forum non conveniens statute provides:
“With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.” [1]
This court has recently discussed the application of § 6 — 3—21.1(a), writing:
“Under the forum non conveniens statute, a trial court must transfer an action when a party seeking the transfer proves either (1) that the convenience of the parties or witnesses would be significantly aided by transfer, see Ex parte Nichols, 757 So.2d 374, 378 (Ala.1999) (‘[T]he burden is on the party moving for the transfer to prove that the transferee forum is significantly more convenient than the plaintiffs chosen forum.’), or (2) that the ‘interests of justice’ necessitate a transfer. Ex parte National Sec. Ins. Co., 727 So.2d 788, 790 (Ala.1998) (‘[T]he “interest of justice” [prong] require[s] the transfer of [an] action from a county with little, if any, connection to the action, to the county with a strong connection to the action.’).”
Ex parte Veolia Envtl. SVC, 122 So.3d 839, 842 (Ala.Civ.App.2013).
“The ‘interest of justice’ prong of § 6-3-21.1 requires ‘the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action.’ Ex parte National Sec. Ins. Co., 727 So.2d [788,] 790 [ (Ala.1998) ]. Therefore, ‘in analyzing the interest-of-justice prong of § 6-3-21.1, this Court focuses on whether the “nexus” or “connection” between the plaintiffs action and the original forum is strong enough to warrant burdening the plaintiffs forum with the action.’ Ex parte First Tennessee Bank Nat’l Ass’n, 994 So.2d 906, 911 (Ala.2008). Additionally, this Court has held that ‘litigation should be handled in the forum where the injury occurred.’ Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006). Further, in examining whether it is in the interest of justice to transfer a case, we consider ‘the burden of piling court services and resources upon the people of a county that is not affected by the case and ... the interest of the people of a county to have a case that arises in their county tried close to public view in their county.’ Ex parte *293 Smiths Water & Sewer Auth., 982 So.2d 484, 490 (Ala.2007). The petitioners in this case are thus required to demonstrate ‘“that having the case heard in [Lee] County would more serve the interest of justice” ’ than having the case heard in [Chambers] County. Ex parte First Tennessee Bank, 994 So.2d at 909 (quoting Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006)).”
Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 540 (Ala.2008).
In Indiana Mills, our supreme court granted the defendants’ mandamus petition and ordered the trial court to transfer the case from Macon County to Lee County based on the “interest of justice” prong of § 6-3-21.1. In doing so, the court cited evidence indicating that the accident giving rise to the action occurred in Lee County, that the law-enforcement and emergency personnel who had responded to the accident were based out of Lee County, that the chief deputy coroner who had investigated the decedent’s death did his work in Lee County, and that the records and documents of the fire department that had responded to the accident were located in Lee County. Our supreme court noted that the only matters connecting the case to Macon County were the facts that one of the individual defendants resided in Macon County and that the employer of the person killed in the accident conducted business in Macon County. Our supreme court held that the nexus between Lee County and the case was strong, that the nexus between Macon County and the case was weak, and that the trial court had abused its discretion in refusing to transfer the case to Lee County. Indiana Mills, 10 So.3d at 542.
Similarly, in Ex parte Autauga Heating & Cooling, LLC, 58 So.3d 745, 750 (Ala.2010), our supreme court granted a petition for a writ of mandamus and directed the Montgomery Circuit Court to transfer that case from Montgomery County to El-more County, pursuant to the doctrine of forum non conveniens. After comparing the strong connection between the civil action and Elmore County, where the events giving rise to the case occurred, and the weak connection between the action and Montgomery County, where the action had been filed, our supreme court stated:
“This Court sees no need to burden Montgomery County, with its weak connection to the case, with an action that arose in Elmore County simply because the individual defendant resides in Montgomery County and the corporate defendant does some business there. We thus conclude that the trial court exceeded its discretion in denying the petitioners’ motion for a change of venue.”
Id. at 750-51.
In this case, there is a strong connection between Hunt’s retaliatory-discharge action and Lee County. As discussed, all the conduct made the basis of the action occurred in Lee County, and Hunt’s “injury” in this case occurred in Lee County. His underlying physical injury — the subject of his workers’ compensation action — occurred at West Fraser’s facility in Lee County. Hunt was treated for that injury in Lee County. The workers’ compensation case, which is related to this case, is being heard in the Lee Circuit Court.
On the other hand, the connection between the retaliatory-discharge action and Chambers County is virtually nonexistent. Hunt lives in Chambers County. The business that West Fraser conducted in Chambers County and that serves as the basis for venue in that county has no material connection with this case. There are no relevant facts in this case involving Chambers County. To echo our supreme *294 court in Autauga Heating & Cooling, we see no need to burden Chambers County with an action that arose in Lee County simply because Hunt lives there and because West Fraser conducted business unrelated to this case there. Accordingly, we conclude that the trial court abused its discretion in denying West Fraser’s motion for a change of venue. The Chambers Circuit Court is hereby directed to transfer this action to the Lee Circuit Court.
PETITION GRANTED; WRIT ISSUED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. This statute does not apply in proceedings seeking modification of child custody, visitation rights, or child support. See § 6-3-21.1(a) and § 30-3-5, Ala.Code 1975.